## No. 10608

PINSON v. BOWLES *ET AL.*

(106 S. E. 775)

1. TRIAL—RIGHT TO OPEN AND CLOSE WAIVED WHERE NOT CLAIMED.— Though under the pleadings defendants were entitled to open and close, yet where the right was not demanded until after plaintiff had begun its opening, defendants cannot complain.

2. APPEAL AND ERROR—WHERE AFTER DENYING RIGHT TO OPEN AND CLOSE, COURT OFFERED DEFENDANTS RIGHT TO REPLY TO PLAINTIFF'S ARGUMENT, ERROR WAS CURED.—Though under the pleadings defendants were entitled to open and close, and that right was denied them, yet where the Court offered to allow them to reply to plaintiff's argument, the error, if any, was cured.

3. TRIAL—CHARGE NOT OBJECTIONABLE WHERE AS A WHOLE IT WAS CORRECT.—Appellants cannot complain of the charge, where they were not prejudiced, and the charge as a whole was correct and applicable to the evidence.

Before SEASE, J., Greenwood, July, 1920. Affirmed •

Action by E. L. Pinson against M. G. Bowles and Mrs. M. E. Bowles on a promissory note. From judgment for plaintiff the defendants appeal.

*Messrs. Grier, Park and Nicholson,* for appellants, cite: *Defendants were entitled to open and reply*: 35 S. C. 165; 50 S. C. 25; 63 S. C. 291; 92 S. C. 122. *Plaintiff's contract to sell was absolute and his failure to sell was a breach of the contract: Elliott on Contracts,* Vol. 3, Sec. 1891.

*Messrs. Tillman and Mays,* for respondent, cite: *Examination of record shows defendants were not prejudiced by Judge's charge*: 93 S. C. 420, 426; 78 S. C. 81; 93 S. C. 295, 299. *Where no time is fixed for the performance of a contract the law fixes a reasonable time in which a party similarly situated could do the work*: 46 S. C. 511.

April 13, 1921.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This is an action on a note. Defense, failure of consideration. Cause tried before JUDGE SEASE and a jury at the April term of Court, 1920, for Greenwood County, and resulted in a verdict in favor of plaintiff for amount sued for.

Exceptions, six in number, allege error on the part of his Honor.

1, 2    Exception 1 alleges on the part of his Honor in not allowing defendant to open and reply. This exception is overruled. The defendant was not prejudiced by such ruling, and at the time of the ruling no suggestion or intimation was given to the Court that the defendant would be prejudiced by such ruling, and by standing by and permitting the plaintiff to offer testimony without claiming the right at the proper time the defendant waived it, but later his Honor gave the defendant the right to reply in argument if they desired it. Ths certanly cured the error, if any.

3    Exceptions 2, 3, 4 and 5 allege error in his Honor's charge. Taking the charge as a whole, the defendants were not prejudced, and the charge as a whole was correct, applicable to the facts testified to, and the law of the case.

Exception 6 alleges error in allowing Ellis to testify as to certain facts. This was not prejudicial; the evidence was competent to show the situation at that time.

All exceptions are overruled, and judgment affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE FRASER, concur.

MR. JUSTICE COTHRAN, (dissenting:) It is my conviction that the judgment herein should be reversed and not affirmed, as a majority of this Court has concluded.

The action is upon a note signed by the defendant, M. G. Bowles, and Mrs. M. E. Bowles, dated June 7, 1918, pay-

able on demand to the plaintiff, E. L. Pinson, or order for
$255, with interest at 8 per cent. per annum compounded.
The answer admits the plaintiff's case upon the pleadings,
and sets up an affirmative defense of failure of considera-
tion.

Under the well-established rule in *Addison v. Duncan,*
35 S. C. 165, 14 S. E. 305; *Beckham v. Railroad Co.,* 50
S. C. 25, 27 S. E. 611, and *Thompson v. Insurance Co.,*
63 S. C. 291, 41 S. E. 464, the defendants were clearly en-
titled to the opening and reply, both in testimony and argu-
ment.

The leading opinion sustains the respondent's position
that the defendants, by not making reasonable demand, have
waived their right to their privilege, and that in any event
the error, if any, was corrected by the Circuit Judge, after
the plaintiff's counsel had made the closing argument to
the jury, extending to defendants' counsel the privilege of
replying.

I do not think that either position should have been sus-
tained. The record shows that the plaintiff was sworn as a
witness, and testified that he lived at Coronaca, was in the
tailoring business, and knew the defendants. That was all.
Interesting facts, perhaps, but entirely unessential. At
this point the defendant's counsel urged his right under the
pleadings to open and reply both in testimony and in argu-
ment. The Circuit Judge ruled that the plaintiff had that
privilege. No objection appears to have come from the
plaintiff's counsel that the claim came too late. There is no
time fixed by the rule for asserting the right to open and
reply, but in reasonable justice to the opposing side it should
not be allowed where the delay in asserting it may have put
him to a disadvantage. I imagine that if the right should
be asserted after the first witness may have been sworn and
before he gives any testimony at all, the proponent of such
witness could not complain, and the claim would be in time.

The same result should follow if the witness has given no testimony pertinent to the case.

In the case of *Barnett v. Gottlieb,* 98 S. C. 180, 82 S. E. 406, the defendant's counsel was allowed the opening and reply in the argument, when under the rule the plaintiff's counsel had that right. The Court says:

"It is true that the record fails to disclose that the plaintiff claimed his right, but it was the duty of the Court to enforce the rules [rule 59, Circuit Court,] and the burden is on the respondent to show waiver of this privilege on the part of the appellant, and no attempt is made to do this."

In view of the failure of the plaintiff's counsel in the case at bar to raise objection to the timeliness of the claim, or to show any prejudicial effect upon his client's rights, at that stage, to allow it, and of the evident discussion and decision of the question upon its merits, I do not think that the defendant can be held to have waived his right. In the Barnett case the Court reiterates:

"It was his [the Circuit Judge's] duty to enforce the rule as to the plaintiff's right to open and close. * * * He had no right to suspend or change rule 59 of the Circuit Court."

I think that it is impossible to conclude that the offer of the Circuit Judge, when Court convened the next morning, the arguments for plaintiff and for defendant having been concluded the afternoon before to allow the defendant's counsel to reply in argument, cured the error in allowing the plaintiff to open and reply in the testimony. It is universally conceded that to open and reply is a right and not merely a privilege, and that an improper denial of the right is ground for reversal. But waiving for the moment this ground of appeal, and coming to the points which more nearly affect the merits of the controversy, the conceded facts as I gather them are as follows: It appears that prior to June 7, 1918, the plaintiff Pinson, had made a contract with the Duplex Chair Company of Chicago, for the pur-

chase of 300 chairs at $8.50 each. f. o. b. Chicago, and had paid $510 on account thereof. He expected to sell the chairs at $22.50 each, and realize a profit of $4,200, less freight and expenses. On June 7, 1918, he agreed to let the defendant, M. G. Bowles, in upon this roseate dream, and they entered into a written contract. The contract recites the above-stated facts, and provides that in consideration of the payment by Bowles of $255 of the $510 which had been paid by Pinson on the chair contract. Bowles was to receive one-fourth of the net profits of the sales of the chairs and Pinson three-fourths, Bowles bearing his proportionate share of the freight and cost of sale. Accordingly Bowles executed the note sued upon, dated June 7, 1918, payable on demand, for $255, with 8 per cent. compound interest, and his wife signed it with him.

The contract does not specifically state who was to sell the chairs, or within what time they were to be sold. The testimony of both the plaintiff and the defendant, Bowles, however, leaves no room for doubt that the chairs were to be sold by Pinson. Bowles further testified that it was also a part of their agreement that Pinson would retain his half interest in the contract. Pinson denies this, and in admitting that he was expected to sell the chairs, qualified it with the limitation, "if he could." Whether in his "desire to associate the said M. G. Bowles in the sale of said chairs" (see contract,) a scheme which in its hopes and results suggests the visions of a Mulberry Sellers, he so limited the attractions to Bowles, is a matter that the jury may well have considered.

Notwithstanding the written contract with Bowles and his agreement to sell the chairs, on the very next day, June 8, 1918, Pinson concluded a contract with one Graham Smith, in almost the identical terms of his contract with Bowles, and relating to the same Chicago chair contract, except that in the Smith contract, Pinson specifically obligated himself to sell the chairs, and to spend at least 12 months, at his own expense, in doing so.

It is significant that in the Smith contract, which was executed the day after the Bowles contract, Pinson allowed Smith one-fourth of the net profits, and reserved three-fourths for himself. Having already allowed Bowles one-fourth, and by the Smith contract allowing him one-fourth, there necessarily remained for Pinson only one-half; which is entirely consistent with Smith's statement that he did not know that Bowles had acquired an interest, and with the conviction in my mind that Pinson did not intend that he should know.

It is impossible for me to determine, even if called upon to do so, the interests which Bowles and Smith respectively acquired in the Chicago contract. The terms of their respective contracts afford no indefinite solution, and the conflicting testimony of Bowles, Smith and Pinson makes it more obscure. According to Bowles, he bought a half interest; according to Smith he bought a half interest; according to Pinson he sold a fourth interest to each of them, retaining a half interest for himself. As possible and plausible theory is that Bowles bought a half interest, Pinson retaining the other half, and taking three-fourths of the profits for his services in selling the chairs against Bowles' one-fourth; and that the same trade was made with Smith, leaving Pinson where he evidently desired to be, completely out of the then questionable venture, so far as obligations were concerned, getting back all he had put in it, and retaining an interest to the extent of one-half of the profits.

The testimony is silent as to what has become of the Chicago contract, except that Pinson had shipped to him four of the 300 chairs contracted for, sold them for about $10 apiece, instead of $24.50, and pocketed that small dust of the balance. He testified that he went to Union and made an honest effort to sell the chairs, but could not do so.

I think that the second exception should be sustained. It is a question of contract, not of injury to Bowles. If Pinson, as a part of his contract with Bowles, agreed to retain the

remaining interest, and did not do so, but disposed of it to Smith, he has broken his contract, and is not entitled to recover anything upon it, regardless of whether the breach injured Bowles or not. The charge imposed the burden upon Bowles to show injury to himself by reason of the sale to Smith, a matter entirely foreign to the issue of compliance with the contract. According to Bowles' contention, the sole inducement of the contract on his part was the retention by Pinson of his interest, and his undertaking to dispose of the chairs. He had the right to impose the personal element as a condition, and if Pinson agreed to it he cannot complain and now seek a compliance by Bowles of his stipulations when he has violated his.

I think also that the second of the exceptions numbered 2, on page 23 of the case, should be sustained. There was nothing in the contract, or in the evidence, or in the contention of counsel for the defendant, that would suggest the idea of time being of the essence of the contract. Bowles' testimony was to the effect that it was a part of the contract that Pinson should sell the chairs, if he so engaged, it became a condition upon his recovering upon the contract, unless his performance was prevented by the act of the defendants or by other causes which would excuse him. If he undertook to sell something that could not be sold, that was his misfortune. 3 Elliott on Contracts, § 1891.