### 13867

SIRGANY v. EQUITABLE LIFE ASSURANCE SOCIETY OF
UNITED STATES

(Two cases)

(175 S. E., 209)

*Messrs.. Thomas, Lumpkin & Cain* and *N. B. Barnwell*, for appellant,

*Messrs. Hagood, Rivers & Young, W. Turner Logan* and *John I. Cosgrove*, for respondent,

June 12, 1934.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

On June 25, 1929, the defendant company insured the life of one Rosa Sarkis, a resident of the City of Charleston, in the sum of $5,000.00, to be paid at her death to her son-in-law, Najeeb Sirgany, trustee, for the uses and purposes stated in the policy. On June 28, a few days after the first policy was issued, Mrs. Sarkis made application for additional insurance, and on July 3 the defendant issued to her, without further medical examination, a second policy

of $5,000.00, in which Sirgany was designated as beneficiary. The first annual premiums on the policies, amounting to $472.35, were paid by the insured. Mrs. Sarkis died on May 4, 1930, within the first insurance year. Her death, as disclosed by proofs submitted to the company, was due to chronic lymphatic leukemia, from which, according to the report of the attending physician, she had probably suffered for several years. Following an investigation, the society refused to pay the insurance, but offered to return the premiums. The plaintiff, however, declined to accept the tender and in due time instituted these two actions for the collection of the policies; the amount in each case being reduced to $3,000.00 for the purpose, it seems, of making the actions triable in the State Court.

The defendant admitted all material allegations of the complaints, except that there was a sum due and owing under either policy; the following language being used in both answers: "This defendant  *  *  *  admits that it has failed and refused to pay such sum and alleges that such declination and refusal was on account of the fact that the said policy or contract of insurance was on June 18, 1930, rescinded on the ground of the fraud practiced in inducing this defendant to issue and deliver said policy of insurance, and that the defendant did at such time, and does now, deny to assume any liability thereunder." It also set up as an affirmative defense "that the policies were void on account of the false and fraudulent representations made by the insured in order to induce the issuance thereof."

By agreement the cases were tried together in the Court below, Judge C. C. Featherstone presiding. Defendant's motion for a directed verdict, made upon grounds which we shall later consider, was overruled. Counsel for the company then claimed the right to make the opening and closing arguments to the jury and asked to be allowed to do so. This request was refused by the trial Judge for the reason, as stated by him, that the motion came too late. The jury found

for the plaintiff in each case the amount sued for, and from judgments entered the defendant appealed.

The first question presented for consideration is whether the trial Court committed error in refusing to direct a verdict for the defendant under the evidence offered in the case.

In Part II of the application, among the questions answered by Mrs. Sarkis, the answers to which were written down by Dr. Frampton, the company's examining physician, were the following:

"Q. 3-F. Have you ever been under observation or treatment in any hospital, asylum or sanatorium? (State where and when).

"A. Yes, Tonsillectomy—Suspense uterus.

"6. Have you ever had or been treated for any disease or disturbance of:

"F. The skin, bones, glands, eye or ear?

"A. No.

"7-F. Have you had any other illness or injury not mentioned above?

"A. No.

"9. State every physician or practitioner whom you have consulted or who has treated you during the past five years? (If none, so state.)

| Name and address | Dates and Details | Result |
|---|---|---|
| Dr. A. J. Buist, | Minor ailments | Good" |
| Charleston, S. C. | | |

The appellant contends that, at the time the insured signed the application and made the foregoing responses to the medical examiner, she was suffering, as shown by the evidence, from a fatal malady, and that her representations and statements were material to the risk, were false and fraudulent, and were knowingly made by her with intent to deceive the company and did deceive it into issuing the policies.

Dr. Buist, a specialist in surgery, and a highly respectable and an experienced physician, testified that he examined Mrs.

Sarkis in February, 1929, and found that she was suffering with enlarged glands in the groin, to which his attention was called by her, and also from the same trouble in her neck; that on April 20, he sent her to the Riverside Infirmary, where she remained for two days for laboratory tests, and that he there made a diagnosis of lymphatic leukemia; that this disease is "characterized by changes in the blood and blood cells, lymphatic glands, spleen and bone matter, changes taking place in those structures, which finally produces death"; that "about the only abnormality of the skin she had was a paleness and a discoloration which you get in anemia, a putty looking skin"; that he did not disclose to her what her trouble was, but she must have known that something was wrong with her; that he continued to treat her for several days and then turned her over to Dr. Robert Wilson, a specialist in medical diseases.

Dr. Wilson stated that he also diagnosed Mrs. Sarkis' trouble to be chronic lymphatic leukemia, a progressive disease which cannot be cured; that, as it can be relieved by x-ray treatment, he referred her to Dr. Robert Taft, a specialist in that line; that he did not tell Mrs. Sarkis that the disease would probably cause her death, for to do so might have a bad effect on the patient, but that he did tell her that he could not effect any relief by medication, and that she would have to undergo x-ray treatment for that purpose. He testified also that in his opinion Mrs. Sarkis knew she was not a well woman.

Dr. Taft stated that he made no examination of Mrs. Sarkis, but was advised of the diagnosis made by the other physicians; that he knew she was suffering from leukemia and gave her the x-ray treatment for her glands.

Dr. Frampton, the company's medical examiner, said that on May 30, 1929, he examined Mrs. Sarkis for life insurance, at the request of the company's special agent, J. H. Miller; that while he may not have read the questions as written in the application, as she "did not understand Eng-

lish very well," as he recalled, he was certain that he did convey to her mind the intent or purpose of the questions; that he did not list the individual illnesses given in question 9, but recorded all information she gave him in regard to her former health, etc., by the use of the words "minor ailments." He also testified that he made the usual examination in her case, but did not observe any enlarged glands in the neck or notice anything peculiar about the color of her skin; that she appeared, as a matter of fact, to be a perfectly normal risk.

We have read with painstaking care the entire record and are constrained to hold that the trial Judge properly submitted the case to the jury. While, as already indicated, Drs. Buist and Wilson expressed the opinion that Mrs. Sarkis must have known that she was not a well woman, they both stated positively that they had not disclosed to her the nature of her disease or that it would prove fatal. In addition, Dr. Buist testified that he had known her for about twenty years, that he had always found her perfectly honest, and that her general reputation was good. Dr. Frampton, who it must be assumed made a proper examination of the applicant in order to determine whether she was a good risk for insurance, was unable to find anything wrong with her. As more than one inference could be drawn from the testimony, the Court could not say, as a matter of law, that Mrs. Sarkis intended to deceive the company and to perpetrate a fraud upon it by her answers, which were representations and not warranties, to the questions propounded by the medical examiner.

The appellant argues that this case is controlled by the principles announced in *Johnson v. New York Life Insurance Company,* 165 S. C., 494, 164 S. E., 175. We think, however, that the cases are easily distinguishable. In the *Johnson case* the insured stated in his application that he did not drink spirits or other intoxicants in any quantity at all; that he had only taken an occasional drink in the past,

and had not taken any of them to excess in the last five years. The undisputed testimony, as stated in the opinion, showed that, during the five years immediately preceding the signing of the application, Johnson had been treated by his physician for alcoholism on ten different occasions, on one of which he was confined to the hospital, that some of such periods of illness ·would last from one to four weeks, and that he was advised by one of the attending physicians to discontinue the use of alcohol as the physician thought it would ruin his health. This Court held that the facts were clearly of such nature that Johnson could not fail to know them when answering the question in the application as to his consultation of a physician; certainly they were of such nature that he would be conclusively presumed to know them.

In the case at bar the facts testified to by the several witnesses present, as disclosed by the evidence recited, a different situation. The case is more nearly like *Rogers v. Insurance Company*, 135 S. C., 89, 133 S. E., 215, 45 A. L. R., 1172, where the defendant complained that the applicant answered falsely the questions relating to previous ailments and surgical operations, with the intent to deceive and defraud the company into the issuance of the policy applied for by him. While there was testimony to the effect that the insured had been operated on for cancer, it was undisputed that he had not been told by the surgeon who performed the operation, or by any one· else, that he had cancer; and the physician who examined him for the company testified that he found no evidences of cancer or, as happened in the present case, anything that indicated that Rogers at the time was not in good physical condition or was not a good risk for life insurance. In that case, as in the present case, testimony was offered as to the good character and honesty of the insured. The Court held that it was for the jury to say, under all the testimony, whether the insured, at or before the time he answered the question, had cancer, and whether,

when answering the questions, held to be representations and not warranties, he knew that he had or had had cancer, if this were the case, and whether he answered as he did for the purpose of defrauding and deceiving the insurance company.

In response to questions asked him, Dr. Buist stated that Mrs. Sarkis unquestionably had lymphatic leukemia, and that her condition as to her glands and skin in April and May, 1929, was perfectly obvious, and that this condition he thought should have been apparent to any practicing physician, if he looked or made an examination. Dr. Wilson testified to the same effect. Counsel for the defendant moved to strike out the questions and answers, and the refusal of the trial Judge to do so is made the basis of an exception.

The appellant contends that this parol testimony, elicited by the plaintiff for the purpose of showing, and which tended to show, that the defendant waived, through its medical examiner, Dr. Frampton, the presence of any disqualifying disease from which the applicant was suffering at the time, by issuing and delivering to her the policies in question, was inadmissible for the reason that the insured, in her written applications, had agreed that "no agent or other person except the president, a vice-president, the secretary, the treasurer or a registrar of the society has power to make or modify any contract on behalf of the society or to waive any of the society's rights or requirements, and that no waiver shall be valid unless in writing and signed by one of the foregoing officers."

This assignment of error is without merit. It does not appear from the record that any objection was made to the admission of the testimony. But, even so, under the decisions of this Court, Judge Featherstone properly refused to strike it out and correctly held that it made a question of waiver for the jury. See *Hollings v. Bankers' Union,* 63 S. C., 192, 41 S. E., 90; *Wingo v. Life Insurance Company,* 155 S. C.,

206, 101 S. E., 653; *McLane v. Insurance Company*, 154 S. C., 366, 151 S. E., 608; *McLaurin v. Life Insurance Company*, 115 S. C., 62, 104 S. E., 327; *Fender v. Insurance Company*, 158 S. C., 331, 155 S. E., 577; *McGuinn v. Life Insurance Company*, 171 S. C., 136, 171 S. E., 793.

The appellant also alleges (Exceptions 5 and 6) that the trial Judge, by his rulings on the admissibility of evidence, his refusal to exclude all testimony tending to show waiver, and his refusal to direct a verdict in favor of the defendant, denied to the company the rights and privileges guaranteed to it by the Federal Constitution.

It is argued that the Court, in admitting parol testimony to show waiver as was done in this case, permitted an entirely different agreement to be established than that which the defendant entered into with the insured, and that the obligation of the insurer's contract was thereby impaired, and the company was denied the equal protection of the laws and due process of law.

Appellant's contentions are not in accord with the decisions of this Court. In *Gandy v. Insurance Company*, 52 S. C., 224, 29 S. E., 655, 656, it was said: "An insurance contract, like any other contract, may be altered by the contracting parties, and the insurer may, of course, waive any provision for forfeiture therein. It may also waive the provision relating to the manner or form of waiver by its agents, since this clause has no greater sanctity than any other part of the instrument." See, also, cases cited in our discussion of the second question.

*Pearlstine v. Insurance Company*, 74 S. C., 246, 54 S. E., 372, 373, is in point. In that case the second question presented by the appeal was whether parol evidence was admissible "to establish that a policy of insurance issued in the name of T. W. Pearlstine individually covered property which was known by the insurance agent before the policy was issued not to belong to him, but to S. W. Pearlstine,

doing business as T. W. Pearlstine, and that the insurance was for the benefit of the real owner." This Court, in an opinion by Mr. Justice Woods, disposed of the question in the following language: "On the second point, the views of the Circuit Court were in accord with a line of decisions in this country, which hold that it is not competent to show by parol evidence that a condition stated in an insurance policy as essential to its validity was known by the local agent not to exist at the time the policy was issued, when the policy provides that no officer or agent shall have power to waive any of the conditions of the policy except by written indorsement thereon. This view is stated and maintained with great force in *Northern Assurance Company of London v. Grand View Building Association,* 183 U. S., 308, 22 S. Ct., 133, 46 L. Ed., 213, where the authorities in its support, both English and American, are reviewed. But the rule adopted in this State and the large majority of the states of the union is that an insurance company cannot avail itself of provisions in the policy that it should be void if certain facts therein mentioned as essential to the insurance should be found not to exist when these facts were known to the agent not to exist when the policy was issued through him, and the existence of such facts and the knowledge of the agent may be proved by parol"—citing cases.

While, as pointed out by Mr. Justice Woods, there is respectable authority that holds contrary to the view stated by that learned Justice to be the prevailing rule in this State, "it is well established that the Courts of one state * * * are not bound by the rules of evidence adopted in another jurisdiction, but the admissibility of evidence * * * is always governed by the *lex fori.*" 22 C. J., 198.

The final contention is that a new trial should be granted for the reason that Judge Featherstone committed error in refusing defendant's request to open and close the arguments to the jury.

Rule 58 of the Circuit Court provides that "the defendant, where he admits the plaintiff's cause by the pleadings, and takes upon himself the burden of proof" shall be entitled to open and reply. In *Addison v. Duncan*, 35 S. C., 165, 14 S. E., 305, 307, the Court, after citing and reviewing a number of cases in which the question was considered, made the following statement: "It seems to us that the true rule to be deduced from all these authorities is that, where the defendant, by his pleadings, admits the plaintiff's cause of action as stated in the complaint, and relies solely upon an affirmative defense, based upon the facts stated in his answer, he is then entitled to open and reply, as the plaintiff in such a case would have nothing whatever to prove, and the defendant, being compelled to assume the burden of proving the facts upon which he rests his affirmative defense, would thus become the actor. The true test is, who would be entitled to the verdict if the case is submitted to the jury simply upon the pleadings, without evidence being adduced by either side? If the plaintiff, then, unquestionably, the defendant, being the actor, would have the right to open and reply."

Applying the above stated rule, we are inclined to the view, upon an analysis of the pleadings in the case at bar that the defendant by its answers admitted the plaintiff's cause of action, and was therefore entitled to open and close had it made the demand in proper time. It waited, however, until the plaintiff had introduced the policies in evidence and rested his case and until all of its own witnesses had testified and its motion for a directed verdict refused. In these circumstances, we think the request was properly refused. See *Pinson v. Bowles*, 116 S. C., 47, 106 S. E., 775.

All exceptions are overruled, and the judgment in each of the cases is affirmed.

Mr. Chief Justice Blease and Mr. Justice Carter concur.

Mr. Acting Associate Justice W. C. Cothran (concurring in result): I concur in the result of this opinion

solely upon the ground that the allegation in the answer of a denial of "each and every other allegation in said complaint contained not herein admitted" is not such an admission of the plaintiff's complaint as would guarantee to the defendant the right to open and reply either in the offering of evidence or in the argument to the jury.

MR. JUSTICE BONHAM concurs.