14027

McLESTER v. METROPOLITAN LIFE INS. CO.

(179 S. E., 490)

Order of Circuit Court reversed.

*Messrs. Elliott, McLain, Wardlaw & Elliott* and *Lee & Moise,* for appellant,

*Messrs. M. M. Weinberg* and *Marion Moise,* for respondent,

March 26, 1935.

The opinion of the Court was delivered by Mr. Justice Bonham.

The respondent is the beneficiary of a policy of insurance on the life of Louisa W. Randolph, issued by the appellant insurance company on the 18th day of October, 1932; the insured died the 9th day of April, 1933. Proofs of death were duly made. The company denied liability, and suit followed. The allegations of the complaint are those which are usual in such cases. For answer, the defendant admitted the allegations of the complaint, but denied its conclusions of law.

For affirmative defense it was alleged that the insured by false answers and fraudulent concealments as to the state of her health and her physical condition, in the application

for insurance, had perpetrated a fraud upon the company which operated to render the policy issued to her null and void by its terms and conditions.

The action was brought in the court of Magistrate Reynolds, of the Third Magisterial District of Sumter County. By the Act of the General Assembly, approved the 18th day of March, 1933 (38 St. at Large, p. 167), this Court was given jurisdiction in civil cases to the extent of $1,000.00. The Magistrate presiding in this case is a lawyer of experience and ability. The case was heard by him, with a jury, the 12th day of January, 1934. At the close of the testimony the defendant made a motion for directed verdict, which was then refused. The Magistrate states thereabouts: "I refused the motion for directed verdict at this time for the reason that the trial of the case had consumed the entire day, and I thought it would be best to submit the case to the jury, and at my leisure study the numerous authorities cited for and against the directed verdict. If I came to the conclusion that a directed verdict should have been granted, I could set aside the verdict and grant the motion for a directed verdict and no harm would be done. If I granted the motion for a directed verdict and the Appellate Court reversed my decision, the county would not be put to the expense of another trial, because the jury had passed on the facts and rendered their verdict. So, for this reason I submitted the case to the jury with the understanding that I would consider the facts in the light of the law cited me, and render my decision later."

The jury found for the plaintiff; the verdict was set aside by order of the Magistrate, and verdict directed for defendant. Plaintiff appealed to the Circuit Court, which appeal was heard by Hon. Philip H. Stoll, who reversed the order of the Magistrate in an order in which he said: "Upon a full hearing of the same (the appeal) it appears that under the law as laid down in the *Wingo case* [(*Wingo v. New York Life Ins. Co.*), 112 S. C., 139, 99 S. E., 436], the *McLane case* [(*McLane v. Metropolitan Life Ins. Co.*), 154

S. C., 366, 151 S. E., 608], the *Palmer case* [(*Southeastern Life Ins. Co. v. Palmer*), 129 S. C., 432, 124 S. E., 577], and related cases there was evidence of waiver to be submitted to a jury, and for that reason it is hereby ordered that the order appealed from be, and the same is hereby reversed."

The appeal to this Court is from the order of Judge Stoll.

The waiver to which the order of Judge Stoll refers is waiver by the company of the alleged frauds and concealments of the insured, after knowledge thereof.

A comprehensive reading of all the testimony set out in the brief leaves no particle of doubt that the insured deliberately planned to, and did, perpetrate a fraud upon the insurance company in obtaining this policy. No agent of the company solicited her to be insured. She went of her own volition to the office of the company in Columbia and sought the insurance. She lived some twenty miles away at the village of Gadsden. It appears from the record that the insured was confined in the hospital from February 16, 1932, to March 20, 1932. Her ailment was diagnosed as cancer of the uterus; it was deemed to be a surgical case. She was informed that her case was hopeless, so far as a cure was concerned, that there was nothing that surgery could do for her. The infected place was cauterized to remove the offensive odor, and she nearly died from loss of blood; a transfusion was necessary to save her life. In 1920 she had been operated on for a lesion at the mouth of her stomach. She was a school teacher, and before going to the hospital in 1932 she was several times deterred by illness from discharging her duties.

It is needless to go into all the sordid details disclosed by the record. In the face of these positive proofs of the terrible condition of her health, the insured, in her application for insurance, made statements thereabout which she knew to be false. In answer to questions she said that her health was good; that her last sickness was "painful menstruation, one week"; she was asked if she had ever had any surgical op-

eration, serious illness or accident, to which she replied "No." To the question whether she had been attended by any physician within the last five years, she answered, "Malaria 1929." To the question, "Have you had any treatment within the past five years at any dispensary, hospital or sanitorium?" she answered, "No." It is useless to continue. There can be but one deduction from the testimony, and that is that this policy was obtained by the deliberate and designed fraud of the insured.

She agreed in her application that: "It is understood and agreed, 1. That the foregoing statements and answers are correct and wholly true, and together with the answers to 'Part B' hereof they shall form the basis of the contract of insurance if one be issued."

In other words, these statements and answers were material in showing the true state of her health; the proof of their falsity, by the terms of the contract of insurance itself, renders it null and void.

But the order appealed from holds that "under the law as laid down in the *Wingo case,* the *McLane case,* the *Palmer case,* and related cases, there was evidence of waiver to be submitted to the jury." Let us see.

The *Wingo case,* 112 S. C., 139, 99 S. E., 436, turns upon the fact that "there was an irreconcilable conflict between the testimony introduced in the case, particularly that of Dr. Bunch and that of Dr. Black, one on the part of the plaintiff and the other on the part of the defense. Dr. Bunch was the agent of the defendant when he examined the applicant. * * * He testified that Wingo never had suffered from tuberculosis and had no spot or focus on his lung. Dr. Black, in behalf of the defendant, testified * * * that Wingo did have tuberculosis, * * * and had a focus on his lung that any doctor could discover." Certainly that made an issue for the jury.

In the present case, the evidence is uncontradicted that the insured had the serious disease (cancer), and ailments disclosed by the medical witnesses and

hospital records, and that she knew it. In the *Wingo case* in that state of contradiction of the evidence on material issues all the witnesses testified to the good reputaton of Mr. Wingo. The Court said that in these circumstances the proof of good character and reputation made an issue for the jury. In the present case, the plaintiff offered but one witness, who testified that the reputation of the insured was good. This testimony made no issue for the jury against the uncontradicted evidence that the answers made by the insured in the application for insurance were false and known by her to be false.

The *Wingo case* is not authority here.

In the *McLane case,* 154 S. C., 366, 151 S. E., 608, it was held that: "Instruction that examination of insured by physician for insurer was evidence that disease did not exist, or that its existence was known about and waived by insurer, *held not erroneous in view of other instructions fully covering the law as to defense of fraud and claim of waiver.*" (Italics added, except for the words "held not erroneous.")

The Court in the main opinion did not override the instruction in the charge of Judge Mauldin in the second *Wingo case,* 155 S. C., 206, 101 S. E., 653, which is that sought to be reproduced in the *McLane case.* It approved it in effect, with an addition to the charge of Judge Mauldin to the effect that if the failure of a physician to discover a disease of the insured was due to the fraud of the applicant, then the plaintiff could not recover.

In the present case the uncontradicted evidence is that there was nothing in the evidence that would indicate to the examining physician that an examination of the genital organs of the applicant was necessary. On the contrary, the answers and statements of the applicant were apparently intentionally directed to avoid such examination. It is also in evidence that because of the peculiar nature and position of the infected parts of this applicant an examination, without some previous knowledge or indication of the case,

would not have disclosed the trouble. Each case must stand on its own bottom.

The *McLane case* cannot be held to be authority for the position that there was evidence in this case sufficient to take it to the jury on the question of waiver.

Nor can the *Palmer case,* 129 S. C., 432, 124 S. E., 577, 578, be held to be such authority in this present case. In that case the Court adopted a statement from the case of *Huestess v. Insurance Company,* 88 S. C., 31, 70 S. E., 403, to this effect: "There is no direct or positive testimony tending to show that the insured intended to practice a fraud upon the defendant other than the mere inference, arising from the signing of the application for insurance, containing the answers alleged to be false."

That holding cannot apply to this case. Here the insured, within a few months after being discharged from the hospital where she was informed that she had an incurable disease (cancer), sought an insurance agent's office and made the patently false statements heretofore recited. And this evidence is uncontradicted; there was left no issue thereabout to go to the jury. Further, in the *Palmer case,* the opinion states that:

"The physician selected by the insurance company for the examination of Palmer was also Palmer's family physician and had treated him. If Palmer had Bright's disease, no one could have been in a better position to know it than Dr. Boykin.

"If Dr. Boykin knew these facts, or if he were in possession of such facts as to have put a reasonably prudent man on inquiry, and if pursued with due diligence would have led to the knowledge of the fact that the applicant had Bright's disease, if he had it this would have been to the company the equivalent of actual notice."

In the case at bar the examining physician knew nothing of the applicant, who was a Negro woman residing twenty miles from Columbia, where the examination was made. There was nothing in her personal appearance to indicate

bad health and put him on inquiry. He states that he had never seen her before. She was an entire stranger to him. The *Palmer case* is not, therefore, authority to sustain the position that there was evidence of waiver in our case which made it proper to submit that question to the jury.

The *Gamble case* (*Gamble v. Metropolitan Life Ins. Co.*), 92 S. C., 451, 75 S. E., 788, 41 L. R. A. (N. S.), 1199, cannot avail the respondent. In that case the evidence shows that Mrs. Gamble was not aware that she was affected with the diseases which she stated in the application she did not have. Her husband was the beneficiary under the policy, and signed the application. He knew of the fact that his wife suffered from the named diseases. A verdict for Gamble was directed in the Circuit Court. It was reversed in this Court. Mr. Justice Woods, for the Court, said: "If he knew of his wife's fatal malady, and concealed it while participating in procuring the insurance for his own benefit, can he be allowed to say that his wife was ignorant * * * when common honesty required him to inform her of her condition, if he wished to insure her life, so that she could speak the truth in her application?"

In the case of *Suggs v. New York Life Ins. Co.*, 174 S. C., 1, 176 S. E., 457, the case turned upon the conflicting testimony whether the insured had knowledge of the fact that he had certain illnesses which he stated in his application he had not had. The Court said that it was not error in such case to submit the issue to the jury.

In the case of *Sirgany v. Equitable Life Assurance Society*, 173 S. C., 120, 175 S. E., 209, the physicians did not disclose to the insured the nature of her disease; it was held to be a question for the jury whether by her answers in her application she intended to deceive the insurer and perpetrate a fraud. And it was also held that testimony that the insured's disease was obvious when examined by the insurer's medical examiner made an issue of waiver by the insurer to be decided by the jury.

No such conditions exist in the appeal at bar. The evidence is undisputed that the insured was informed by physicians, who diagnosed her case, of the malignant nature of the disease with which she was afflicted, and the hopelessness of effecting a cure. Nor is there any evidence that her disease was obvious. On the contrary, there is evidence that she had the appearance of being in good health.

In the case of *Johnson v. New York Life Ins. Co.,* 165 S. C., 494, 164 S. E., 175, 176, the action was brought by the beneficiary under a life insurance policy, on which liability had been denied by the company because of alleged fraud perpetrated by the insured in procuring the policy. It appears that on examination on his application, in answer to questions, he said that he did not drink intoxicants at all; that he had in the past taken an occasional drink; that he had not taken any in the five years preceding his examination; he also answered that he had not consulted a physician for, or suffered from, any disease of the brain, nervous system, heart, blood vessels, lungs, skin, etc.; nor had he consulted a physician for any ailment or disease not included in the answers given. He said the only physician he had consulted within five years was for a mild attack of influenza in 1918, and two treatments with cold vaccine in 1928 and 1929. The learned Justice who delivered the opinion in that case said:

"Let us examine the record with reference to these questions.

"The undisputed testimony shows that, during the five years immediately preceding the signing of the application, the insured had been treated by physicians for alcoholism on ten different occasions, on one of which he was confined to a hospital; that some of such periods of illness would last from one to four weeks; and that he was advised by one of the attending physicians to discontinue the use of alcohol as the physician thought it would ruin his health. It is inconceivable that, under the circumstances, the insured did not

know that his answer to the question as to whether he had consulted a physician, etc., was untrue."

Further, the eminent Justice said: "We recognize that, ordinarily, the question of fraud in a case of this kind is for the jury, but we feel that this is one of those rare cases in which the undisputed facts can reasonably give rise to only one inference, namely, that the policy was procured by fraud. The trial Court should have directed a verdict for the defendant on that ground."

The similarity of the facts in that case and the case at bar is striking. Here the applicant answered the essential and important questions of the application untruthfully; of that there can be no shadow of doubt. In the *Johnson case,* the inference of his knowledge that his answers were false is deduced; in the present case there is the positive testimony of physicians that the insured was informed that she had cancer, and that there was no hope of a cure. This is another of those "rare cases" where there was no issue of fraud to be submitted to the jury, and where it became the duty of the trial Court to direct a verdict for the defendant.

It is sought to save the situation by the contention that the company did not rely on the answers of the insured and the examination of its medical representative, but made a special examination. The circumstances of this examination are made perfectly plain in the record, and refute the suggestion that the company was dissatisfied with the examination made by its physician, and made an independent examination.

It appears that the application disclosed that the applicant, a married woman, was applying for an additional $1,000.00 insurance, while her husband carried only $1,000.00, and that the policy sought by the insured was to be made payable to the applicant's sister. These people were Negroes; they lived at a distance of twenty miles from the office of the company. The home office wanted, naturally, to know why the sister was named as beneficiary instead of the husband. Mr. Roseberry, the manager of the Columbia office, testified

that the home office never requested him to make any investigation of the physical fitness of the applicant other than that designated by the application; that they wanted information as to why the applicant was making her sister the beneficiary when she had a living husband. He further testified as follows: "All reputable insurance companies are very careful as to the nature of the beneficiary; they wish to know if it is speculative or not. They want to know what the proposed beneficiary's interest is in the estate or death of the insured person, and unless there would appear to be some insurable interest they would not issue the insurance and in the case of a sister, where it did not appear that she was in any sense dependent upon this applicant for support they naturally inquired what her insurable interest was, to learn of any possibility of speculation."

It appears that it had been reported that the husband of the applicant had been once rejected for insurance; this report was found to be untrue, and the applicant signified that she was willing that her husband be made the beneficiary of the policy applied for. In these circumstances the company desired information about him; his character, his reputation, etc. To obtain this information Mr. Roseberry employed the Hooper-Holmes Bureau of Columbia, S. C., to make a "Commercial Report" thereabout. A careful examination of this commercial report discloses that it has no reference to the nature of the examination and report made by the company's medical examination. It is in no sense supplemental of the report of the applicant's physical condition, as made by the medical examination. It is no ground for submitting to the jury the question of waiver by the company.

It does not appear from his order that the Circuit Judge laid stress on this ground of waiver, but relied on the law as laid down in the *Wingo case, McLane case, Palmer case,* and related cases.

Those cases do not govern this case.

The order appealed from is reversed.

436

Mr. Chief Justice Stabler and Mr. Acting Associate Justice M. M. Mann concur.

Mr. Justice Carter concurs in result.