14229

CRUMEL v. METROPOLITAN LIFE INSURANCE COMPANY

(184 S. E., 169)

*Messrs. Julian S. Wolfe,* and *Elliott, McLain, Wardlaw & Elliott,* for appellant,

*Messrs. E. B. Friday* and *Cooper & Maher,* for respondent,

February 13, 1936.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

The application for the insurance policy in this case contained, among other provisions, the following:

"It is understood and agreed: 1. That the foregoing statements and answers are correct and wholly true, and, together with the answers to questions on Part B hereof, they shall form the basis of the contract of insurance, if one be issued."

"I hereby certify that I have read the answers to the questions in Part A hereof and to the questions in Part B hereof, before signing, and they have been correctly written, as given by me, and that they are full and complete, and that there are no exceptions to any such answers other than as stated herein."

The policy is dated June 13, 1933. The insured died December 26, 1933. The amount of the policy is $1,000.00, and the beneficiary therein named is the respondent herein. Proof of death of the insured was duly filed, and payment of the sum provided for in the policy refused by appellant; it alleging in its answer to the complaint of respondent that the policy of insurance was issued by reason of appellant relying solely upon the statements, answers, and representations contained in the application for the policy sued upon (the application being of date May 13, 1933), which were in part as follows:

"6. Present condition of health? (Ans.) Good. 7. (a) When last sick? (Ans.) Winter, 1932. (b) Nature of last sickness? (Ans.) Biliousness. (c) How long sick? (Ans.) Several days, 9. Any physical or mental defect or infirmity? If yes, give particulars. (Ans.) No. 11. Have you had any surgical operation, serious illness or accident? If yes, give

date, duration and name of ailment. (Ans.) No. 15. Have you ever been told that you had any heart trouble? (Ans.) No. 16. Name and address of your usual medical attendant? (Ans.) Dr. Guignard, Columbia, S. C. 17. Have you ever had any of the following complaints or diseases (among others disease of the heart)? (Ans.) None. 18. Have you been attended by a physician during the last five years? If yes, give name of complaints, dates, how long sick, names of physicians? (Ans.) With biliousness, 1932, several days, cured, Dr. Guignard."

And appellant further answered as follows:

"Relying upon the above answers to the questions set forth the defendant was led to believe that the plaintiff was in a good and insurable condition and issued its said policy upon the basis thereof. Whereas, the said Louisa Crumel was not then in sound health, but was at that time suffering from serious heart diseases which caused her death about eight months thereafter, and had within five years prior to the signing of said application been treated by a physician, to wit: Dr. Jane Bruce Guignard for the said heart disease, and her condition was known to the said Louisa Crumel at the time she signed said application and made the answers to the questions therein contained.

"7. That had the defendant known that the said Louisa Crumel had been treated by a physician or physicians during the five years prior thereto it would not have issued said policy of insurance upon the life of the said Louisa Crumel, but would have refused to insure her. That the said answers to the questions contained in the application were false and misleading to the defendant, and it was only because of the deceptions caused that the said policy was issued, and, therefore, the same is void."

Appellant made a tender of the premium paid for the policy prior to the commencement of this action, and again just before entering upon a trial of the case, which was refused by respondent.

The testimony on behalf of appellant was to the following effect. On April 1, 1932, the insured went to the office of Dr. Jane Bruce Guignard, a physician in the City of Columbia, S. C., approximately thirty miles from North, S. C., the home of the insured, complained of feeling "very poorly," and said she was bilious. Dr. Guignard, an independent practicing physician, and in no wise connected with appellant, gave insured a thorough examination, found that she had a very poor heart and elevated blood pressure, and that her condition was very serious. Dr. Guignard saw the insured again on April 8, one week after the first visit, again in October, 1932, and on December 1, 1933, the month and year in which the insured died. Dr. Guignard testified that she very carefully explained to the insured upon the first visit to her office her real condition, and told her the only way, in her opinion, she (the insured) could get better; that she explained to insured the seriousness of her condition, urged her to rest and let the other members of the family do the housework, and that she needed absolute rest and quiet; also advised the insured as to eating, sleeping, and her general care. The respondent herein, the son of the insured, accompanied his mother to the office of Dr. Guignard. Dr. Guignard testified at one time positively that she had also explained to the son the condition of his mother, but later qualified her statement, saying in answer to a direct question, "I think I did." When Dr. Guignard saw the insured in October, 1932, she had greatly improved, but in December, 1933, the month in which she died, her condition was about the same as in April, 1932. Dr. Guignard also testified, when asked on cross examination, if there would have been any difficulty in a physician determining the condition of the insured between April and October, 1932, upon an examination, "I don't suppose that her condition was as plain at all times," and, upon being urged for a direct answer, stated, "In a case like that there should always be a thorough examination." It was also developed, on cross ex-

amination, that the insured, in addition to complaining of biliousness, stated to Dr. Guignard that she had been under treatment for high blood pressure for five years. The appellant made no inquiry of Dr. Guignard concerning the insured until after the insured's death.

W. M. Addison, assistant to the manager of appellant, at Columbia, S. C., North, S. C., being in the territory of the Columbia office, testified, among other matters, that in the general insurance business, and particularly with appellant, the insurance companies rely principally, almost entirely, upon answers of an applicant for insurance in the application, and that on a "$1,000.00 policy, for a woman, where her age is stated as forty, a thorough examination is not made by the appellant's examining physician due to the additional expense; that if the appellant had known the applicant (the insured) had been treated for heart trouble and elevated blood pressure, it would not have written the policy." On cross examination Mr. Addison testified that Dr. W. L. Heaner was a medical examiner for appellant, has examined the insured in this case (the report of Dr. Heaner was in court and inspected by the witness), and the following questions and answers were propounded and given:

"Q. That is Doctor Heaner's report? A. Yes, sir.

"Q. It was upon the strength of that report, that application in there, that this policy was issued? A. Yes, sir.

"Q. He made that report? A. Yes, sir.

"Q. He was the company's representative in making that examination? A. Yes, sir.

"Q. It was after his examination and report that this policy was issued? A. Yes, sir."

The report of Dr. Heaner, in answer to the question, "Rate, rhythm and other qualities of pulse?" showed "76 —soft—reg.—full," and to the question, "Do you consider the applicant as first-class, average or poor?" he answered, "First class."

L. P. Rich, the agent who procured the application, testified that in the type of insurance issued insured blood pressure examination is required to be made by appellant's examining physician, but also testified that he would not have taken the application had he been advised that the insured had suffered from heart trouble.

In reply, the respondent testified the agent of appellant sought his mother, the insured, and solicited her application for the insurance; that he carried his mother to Dr. Guignard because she claimed she was suffering from biliousness, but denied that Dr. Guignard informed him that his mother had any form of heart trouble, or that his mother had ever told him she had heart trouble, and that she always claimed she was suffering from biliousness; that in preparing the proof of death, while mentioning other physicians who had attended his mother, he did not mention Dr. Guignard. It also developed that at the time the policy herein sued upon was applied for and issued another policy in the sum of $1,000.00 was applied for by the insured and issued to her, the beneficiary therein being a daughter, the sister of respondent. The assistant to the manager of appellant at Columbia, S. C., had testified that a thorough physical examination of applicants for insurance is not made by the examining physician for appellant unless the amount applied for exceeds $2,000.00, but that appellant relies almost entirely upon the answers of the applicant in the application for the insurance.

At the conclusion of the testimony, appellant moved for a directed verdict in its behalf on the grounds: * * * First, that the only inference to be drawn from the testimony is that within three years prior to the signing of the application and issuance of this policy of insurance, the insured was suffering from heart trouble and kidney trouble and had been treated by a physician for such trouble within the stated period, which fact had not been brought to the attention of the defendant, the insured having full knowledge of such fact, and second, the only inference to be drawn

from the testimony is that insured obtained the policy of insurance under false pretense and for the purpose of defrauding the company, and without disclosing to it the true condition of her health, which condition was well known to insured. Had such condition been made known to the company they would have never issued the policy."

The motion was refused, and, a verdict having been rendered against appellant, a motion for a new trial was made, based on practically the same grounds as was the motion for a directed verdict, and, in addition, on the ground that the trial Court had erred in refusing appellant (defendant below) the right to open and close the case. Exception is taken to the rulings of the trial Court in refusing to direct a verdict, in refusing a new trial, and refusing appellant the right to open and close. The latter exception will hereafter be considered.

The motion for directed verdict and new trial referred to the insured having kidney trouble, but there is nothing in the testimony from which it could be inferred that the insured ever suffered from such ailment.

We have set forth rather fully the facts of this case, since, as has heretofore been stated by this Court in similar cases, each case must stand on its own bottom.

Appellant places great reliance on the recently decided case of *McLester v. Metropolitan Life Ins. Co.*, 175 S. C., 425, 179 S. E., 490. There is marked similarity, but there is one distinction in particular fatal to the contention of appellant. In the *McLester case* the every act on the part of the insured pointed directly and convincingly to a fraudulent scheme on her part to procure the policy of insurance. She had cancer of the uterus. The infected place had been cauterized to remove offensive odor. She had been fully informed of her condition and that it was hopeless, so far as a cure was concerned, that there was nothing surgery could do for her. There was nothing in the personal appearance of the applicant to indicate to the physician who examined her

that an examination of her genital organs was necessary, and, on the contrary, the answers and statements of the applicant were apparently intentionally directed to avoid such examination, and no examination of her genital organs was made.

In the case at bar, the applicant had been told that she had a bad heart and high blood pressure. She was advised what to do, and, under the treatment, or by following the directions of Dr. Guignard, had greatly improved between April and October, 1932. In fact, she did not have occasion to visit Dr. Guignard between October, 1932, and the date she applied for and received the policy of insurance. Dr. Heaner, the physician of appellant, made an examination of the appellant, and reported a pulse beat of 76, soft, regular, and full. The agent of the appellant testified that it was the duty of the examining physician to take applicant's blood pressure, and, there being nothing to the contrary, we assume he performed his duty. The physician reported applicant a first-lass risk, We do not deem it necessary to further set forth a comparison of the facts of the *McLester case* with the facts of this case.

The cases of *Wingo v. New York Life Ins. Co.*, 155 S. C., 206, 101 S. E., 653, and *McLane v. Metropolitan Life Ins. Co.*, 154 S. C., 366, 151 S. E., 608, appear to establish the law of this State, in reference to insurance contracts, to be as follows: That the examination of an applicant for insurance, who is afterwards accepted by a physician selected by the insurer, is some evidence of one of two things: (1) That a disease which would have prevented the policy from being issued did not exist; or (2) that its existence was known and waived by the insurer, unless the physician's failure to discover a disease of the insured was due to the fraud of the applicant. And such evidence is sufficient to carry the case to the jury on the question of waiver when the insurer pleads fraud in the obtaining of the contract of insurance, based on the concealment from the insurer of some disease in the insured,

the knowledge of which, if communicated to the insurer, would have caused the insurer to decline to enter into the contract. This is the identical language, taken as a whole, employed by Mr. Justice Blease in the *McLane case*.

Ordinarily, the question of fraud in a case of this kind is for the jury, and it is only in rare cases where the undisputed facts can reasonably give rise to only one inference, namely, that the policy was procured through fraud, that a verdict should be directed. *McLester v. Metropolitan Life Ins. Co., supra*.

The case of *Cooley v. Metropolitan Life Ins. Co.,* 153 S. C., 280, 150 S. E., 793, also relied upon by appellant, is distinguishable from the case under consideration, in that no medical examination was had in the *Cooley case*.

The second question set forth in appellant's brief does not appear to have been made a ground of motion for directed verdict or to have been made an issue by the pleadings. It would therefore not be proper for this Court to pass upon this question on this appeal.

Under the testimony in this case the trial Judge did not commit error in refusing the motion of appellant for directed verdict. It was his duty to submit both the question of fraud and of waiver to the jury. Nor can we say he erred in refusing a new trial; this being a matter in his sound discretion.

We now come to consider appellant's Exception 1, which relates to the trial Judge refusing appellant (defendant below) the right to the opening and closing of the case. This is a recognized substantial right, and it is mandatory upon the trial Judge to enforce the rule, which is as follows:

"58

"Opening and Reply

"Argument and Reply.—On all rules to show cause where a party failing to answer would be in contempt, the party called on shall begin and end his cause; and on all motions of special matters, either springing out of the cause or other-

wise, the actor or party submitting the same to the Court shall in like manner begin and close; and so shall the defendant, where he admits the plaintiff's cause by the pleadings, and takes upon himself the burden of proof, have the like privilege.

"The party having the opening in an argument shall disclose fully the law upon which he relies if demanded by the opposite party."

The leading case in this State, and a case which has been cited and followed, is *Addison v. Duncan,* 35 S. C., 165, 14 S. E., 305, 307. After reviewing all prior decisions of this Court, Mr. Chief Justice McIver, writing the opinion in the *Addison v. Duncan case,* stated the application of the rule as follows: "It seems to us that the true rule to be deduced from all these authorities is that, where the defendant, by his pleadings, admits the plaintiff's cause of action as stated in the complaint, and relies solely upon an affirmative defense, based upon the facts stated in his answer, he is then entitled to open and reply, as the plaintiff in such a case would have nothing whatever to prove, and the defendant, being compelled to assume the burden of proving the facts upon which he rests his affirmative defense, would thus become the actor. The true test is, who would be entitled to the verdict if the case is submitted to the jury simply upon the pleadings, without evidence being adduced by either side? If the plaintiff, then, unquestionably, the defendant, being the actor, would have the right to open and reply."

In *Beckham v. Southern Railway Co.,* 50 S. C., 25, at page 36, 27 S. E., 611, 615, it is stated: "The true rule in the cases where defendant acquires the right to open and reply is well stated in the opinion of Mr. Chief Justice McIver in *Addison v. Duncan,* 35 S. C., 165, 14 S. E., 305, to exist in those cases where the defendant, by his pleadings, admits the plaintiff's cause of action as stated in the complaint, and relies solely upon an affirmative defense, based upon facts stated in the answer; so that, without evidence by defendant, the plaintiff would be entitled, on the plead-

ings, to a verdict. It is very clear that the defendant here did not fulfill these requirements in its answer."

The most recent case which we have had called to our attention, or which we have been able to find, is *Sirgany v. Equitable Life Assurance Society,* 173 S. C., 120, 175 S. E., 209, 210, opinion by Mr. Justice Stabler, now Chief Justice, in which the Court cited with approval the case of *Addison v. Duncan, supra,* and affirmed the Circuit Court in its refusal to allow defendant the right to open and close, only by reason of the fact that demand of this right had not been made in proper time.

In the *Sirgany case* the answer admitted the material allegations of the complaint, including the issuing of the policies of insurance sued upon, but denied there was any sum due and owing under either policy; admitted that defendant had failed and refused to pay; and alleged that the policies had been rescinded on the ground of the fraud practiced in inducing defendant to issue and deliver the policies of insurance; and set up the affirmative defense "that the policies were void on account of the false and fraudulent representations made by the insured in order to induce the issuance thereof."

In the case under consideration, the answer of appellant admitted every material allegation of the complaint. It then denied there was any sum due by reason of the issuance of the policy of insurance sued upon, and alleged that said policy was issued by appellant relying solely upon the statements, answers, and representation contained in application for the policy which were alleged to be untrue, false, and misleading, etc., and but for which statements and answers the policy would not have been issued. At the call of the case for trial, appellant took the position ·that there was nothing necessary for respondent (plaintiff) to do to prove his case—that the policy had been admitted—and he did not ·even have to put this in evidence; that the defense was an ·affirmative defense, and appellant (defendant) was therefore entitled to the opening and reply. The trial Court re-

fused appellant this right, and had respondent offer the policy sued upon in evidence. Appellant then proceeded with its testimony. Again at the conclusion of the taking of the testimony and refusal of the Court to direct a verdict in behalf of appellant appellant's attorneys demanded the right to make the opening and closing argument, which was refused.

Applying Rule 58 of the Circuit Court (this rule being also applicable to the Orangeburg County Court), and the interpretation of the rule as laid down in *Addison v. Duncan, supra, Beckham v. Southern Railway Co., supra,* and *Sirgany v. Equitable Life Assurance Society, supra,* upon a careful analysis of the pleadings in this case, the writer hereof is of the opinion that appellant was entitled to open and reply.

However, the other members of the Court are of the opinion that, the answer of defendant having denied Paragraph 5 of the complaint, that is, defendant having denied that it had failed and refused to pay after demand therefor, the defendant was not entitled to open and reply. Therefore this exception is also overruled.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER and FISHBURNE concur.

MR. JUSTICE BONHAM did not participate.