10499

LIVINGSTON v. UNION CENTRAL LIFE INSURANCE CO.

(104 S. E. 588.)

1. INSURANCE—APPLICANT NOT PUT ON NOTICE BY STIPULATION THAT HE MUST ANSWER QUESTIONS CORRECTLY.—Applicant for life insurance was not put on notice by stipulation that all statements should be deemed representations and not warranties, and that no statement should avoid the policy unless contained in the written application and that he must answer the questions correctly at the peril of the loss of his policy, and he never agreed to so much by the stipulation.

2. INSURANCE—WHETHER ANSWER OF APPLICANT MATERIAL TO RISK MIXED QUESTION OF LAW AND FACT.—Whether an answer of an applicant for life insurance was material to the risk is a mixed question of law and fact.

3. INSURANCE—EVIDENCE INSUFFICIENT TO SUSTAIN FINDING INSURED'S NEGATIVE ANSWER IN APPLICATION WAS MATERIAL TO RISK.—In an action on a life policy, evidence *held* insufficient to justify finding

_____

NOTE.—On the question of time covered by question or representation as to consultation with physician, see note in 45 L. R. A. (N. S.) 162.

As to what constitutes consultation with, or attendance by, physician, within the meaning of an application for life insurance, see note in 18 L. R. A. (N. S.) 362.

that negative answer to the question whether insured had had any illness or consulted any physician in the last five years was material to the risk.

Before WHALEY, J., County Court, Richland, October term, 1919.   Reversed.

Action by Mrs. Mattie Caldwell Livingston against the Union Central Life Insurance Company of Cincinnati, Ohio. From judgment for defendant, the plaintiff appeals.

The exceptions follow:

1. Because his Honor erred in charging the jury as follows:

"Now, I have ruled that no fraud was in this case.   There is no testimony of fraud in this case.   It is a question of false misrepresentation.   And in order to avoid this policy, to make it of no effect in the eyes of the law, any one of those two representations here must have been false, must next have been material to the risk, the insurance company relying upon such representations in making or entering into its contract. * * *

"As to the first answer, which is alleged here to have been false, which answer was, 'No,' to the following question, 'Have you ever had any of the following diseases or symptoms, loss of consciousness, dizziness, duodenal ulcer?'   As to the first two there is no issue as to those.   Those go out of the case.   That leaves for your consideration only one— duodenal ulcer.   Did the deceased make a false statement in answering that question?

"There did not necessarily have to be any intent on his part to deceive.   But was his answer correct or was it incorrect? * * *

"What those facts are it is for you and not for me, but take them all, whatever they are, and from them say what conclusion would a reasonable, ordinary, prudent man, acting under similar circumstances, have come to.   Would he

9—S. C. 115.

have concluded that he had duodenal ulcer? If so, then Mr. Livingston should. have so concluded, and if he answered, 'No,' then his answer would have been false, no matter how it was made, it would have been false, and if material to the risk and relied upon by the insurance company underwriting that risk and entering upon the contract of insurance, his policy would be void, because as we all know these contracts are determined by the risk. * * *

"As to whether or not there was any consultation—that is a question that should be left to you gentlemen. Take all of the facts and circumstances there; apply the same test I gave you just now. Would that ordinary, reasonable, prudent man have considered that there was such a consultation as this contract called for? * * *

"Now, if you believe that there was a falsity of representation under what I have already given you in regard to any one of those answers, that would not be enough to vitiate this policy. It must next be shown to you that they were material, each or both, as the case may be, and relied upon by the insurance company when entering into this contract."

The error being that in such a case a misrepresentation or misstatement in the application will not enable the insurance company to avoid the policy, even though material and relied upon, unless the same be fraudulent—unless consciously made by insured, with intent to deceive.

2. That his Honor erred in charging the jury:

"* * * That leaves for your consideration only one— duodenal ulcer. Did the deceased make a false statement in answering that question?

"There did not necessarily have to be any intent on his part to deceive. But was his answer correct or was it incorrect? * * *

"If there was a consultation between him—between Livingston and the physicians—or if he had discussed the matter with a physician, or if there were any other circum-

stances bringing it to his attention that anything was the matter with him in the way of duodenal ulcer, then take all of the circumstances, whatever they are, going only by the facts of this case, for outside of that realm you cannot go, and what those facts are it is for you and not for me, but take them all, whatever they are, and from them say what conclusion would a reasonable, ordinary, prudent man, acting under similar circumstances, have come to. Would he have concluded that he had duodenal ulcer? If so, then Mr. Livingston should have so concluded, and if he answered 'No,' then his answer would have been false, no matter how it was made, it would have been false. * * * "

Thereby giving to the jury a false test to determine whether insured had correctly answered the question, "Have you ever had duodenal ulcer?" in that it permitted the jury to conclude that his answer was false or incorrect without even requiring defendant to prove that insured in fact had duodenal ulcer.

3. Because, upon the motion for a new trial made by the plaintiff upon her first ground, as follows:

"(1) That his Honor erroneously charged the jury that the defendant need not establish fraud, in any of its phases or meanings, on the part of the insured in order to avoid the policy, and thereby by inference, if not directly instructed the jury that it was not necessary for defendant to prove that Livingston was even conscious of the misstatements of facts alleged to have been made in the application,"—his Honor refused the same and placed his refusal upon the following ground, as appears from his order:

" * * * I am of the opinion that it was not necessary, in order to defeat the policy, for the defendant to show that Mr. Livingston was in bad faith endeavoring to defraud the insurance company, and it appears from the authorities that if one secures a contract for insurance upon a false statement of a material fact, which fact was in the knowl-

edge of the applicant, and which false statement was material, and misled the company issuing the policy, that said policy should be avoided. This was the issue which I left to the jury, instructing them that, while it was not necessary to show fraud, it was necessary to show that Mr. Livingston knew the representations to be untrue. * *. * "

The error being:

(a) That his Honor thereby refused the motion upon the ground that he had submitted the issue of fraud to the jury, when, as a matter of fact, he had repeatedly ruled during the trial and had explicitly instructed the jury that the issue of fraud was not in the case; and (b) that his Honor sustained the verdict upon the ground that he had by his charge required defendant to show that insured knew the representations to be untrue, when he had made no such requirement.

4. Because his Honor refused plaintiff's motion to set aside the verdict and enter judgment for plaintiff which was made upon the following ground:

"Plaintiff also moves the Court to set aside the verdict and enter judgment for plaintiff upon the ground that defendant could not succeed without proving fraud, and defendant's counsel stated in open Court that he had not alleged fraud in his answer and did not intend to charge Livingston with fraud in the case"—and erred in refusing the same for the reasons therein stated, and further erred in refusing the same upon the ground set forth in his order:

" * * * I am of the opinion that it was not necessary, in order to defeat the policy, for the defendant to show that Mr. Livingston was in bad faith endeavoring to defraud the insurance company, and it appears from the authorities that if one secures a contract for insurance upon a false statement of a material fact, which fact was in the knowledge of the applicant, and which false statement was material and misled the company issuing the policy, that said policy

should be avoided. This was the issue which I left to the jury, instructing them that while it was not necessary to show fraud, it was necessary to show that Mr. Livingston knew the representations to be untrue. * * * "

The error being:

(a) That his Honor thereby refused the motion on the ground that he had submitted the issue of fraud to the jury, when, as a matter of fact, he had repeatedly ruled during the trial and had instructed the jury that the issue of fraud was not in the case; and (b) that his Honor refused the motion upon the ground that he had required defendant to prove that insured knew the representations to be untrue, when he had made no such requirement.

5. Because, for the reasons therein stated, his Honor erred in refusing to direct a verdict in favor of the plaintiff upon the plaintiff's first ground of the motion to direct a verdict, as follows:

"(1) Because, under the construction of the answer in this case, given to it by defendant's counsel in open Court, there is no allegation of fraud or fraudulent intent on the part of the insured in making the alleged misstatements of fact set up in the answer; and, in the absence of fraud, such misstatements do not make the policy either void or voidable, and constitute no defense."

6. Because, for the reasons therein stated, his Honor erred in refusing to direct a verdict in favor of the plaintiff upon plaintiff's second and third grounds, as follows:

"(2) Because, from the entire evidence, it does not appear that the defendant has elected to avoid or cancel said policy with reasonable promptness.

"(3) Because, under the entire evidence, the defendant has failed to establish that it tendered or offered to return the premiums paid on said policy within a reasonable time after it had notice of the misstatements in the application upon which it now relies to avoid the policy."

*Messrs. Lyles & Lyles,* for appellant, cite: *Fraud is necessary element to avoid the policy*: 61 S. C. 338; 80 S. C. 392; 83 S. C. 236; 92 S. C. 451; 106 S. C. 419; 107 S. C. 21; 112 S. C. 139; 99 S. E. 436; 101 S. E. 653; 110 S. C. 384; 111 S. C. 399; 171 Pac. 621; 173 Pac. 841. *Test of what a reasonable man would have concluded or believed was erroneous:* 106 S. C. 419; 112 S. C. 139. *Tender came too late:* 56 S. C. 508; 61 S. C. 455; 107 N. E. 557; 92 N. E. 380; 88 S. C. 533; 111 S. C. 339.

*Mr. R. B. Herbert,* for respondent, cites: *If representation is false and material to the risk, no liability under policy, however innocently the misrepresentation was made:* 16 A. & E. Enc. of Law (2d Ed.) 933; 59 Atl. 116; 120 U. S. 183; 98 Mass. 401; 53 Atl. 1102; 16 Atl. 339; 10 Am. St. Rep. 240; 86 S. W. 522; 81 S. E. 1014; 177 App. 50. *Intent is immaterial where the concealment relates to a matter with reference to which concealment is made:* 14 R. C. L. 1025. *Fraud need not be proven where representation is false and material:* 3 Joyce Ins. (2d Ed.), sec. 1897; 79 S. E. 809; 117 U. S. 529; 241 U. S. 622; 60 L. Ed. 1210. *Intent to defraud is not necessary where warranted statement is untrue:* 83 S. C. 236; 65 S. E. 231. *Fraud should not be charged loosely, and not even then unless necessary to a just decision:* 111 S. C. 482; 98 S. E. 234. *Where tender is idle, need not be made:* 101 S. E. 50. *Question for jury:* 107 S. C. 393; 93 S. E. 141; 102 S. C. 115; 86 S. E. 484.

October 11, 1920.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

The action is upon a contract of insurance, evidenced by a policy for $1,000, on the life of John F. Livingston. The defendant had a verdict, and the plaintiff has appealed from the judgment.

Let the exceptions be reported.

The charge of the Court amounted to a practical direction of the verdict, and that is the chief exception.    The answer does not charge that the insured intended to deceive and defraud the company, nor does it recite circumstances from which that intent is reasonably inferable.    The Court "ruled that no fraud was in the case."    And though the appellant's counsel said at the bar that he had not conceded so much, only that he did not then or now charge fraud; yet neither by plea nor by proof is the issue of fraud presented.    And it is bound to be so, for the agent who wrote the policy testified that he solicited the insured for four years before he secured a contract for $2,000, and that upon the agent's. insistence $8,000 more was added to that.    It is also in evidence that Mr. Livingston had in the same company a policy paid up some 20 years, and that he was a man of fine reputation.

The company's sole reason for rejecting the contract in issue lies in the single circumstance that the applicant answered "no" to the question: "Have you had any illness, or have you consulted any physician, in the last five years?" There was another question and answer pleaded in defense, one ·which asked if the applicant had ever had duodenal ulcer; but the appellant's counsel said at the bar that his chief reliance was on the answer to the question first above quoted, and especially to so much of it as inquired about consulting a physician; and we shall confine ourselves to that answer.

It is not contended by the defendant that the question and answer before quoted, by themselves alone, would avoid the policy.    To accomplish that end reliance is chiefly had upon a stipulation in the policy.    That stipulation, with irrelevant words omitted and the words in brackets supplied, reads thus: "All statements [ in the application] shall * * * be deemed representations and not

warranties. * * * No such statement shall avoid this policy * * * unless it is contained in the written application."

The converse of the latter clause of that stipulation is that statements contained in the application shall avoid the policy. But there is no sense in such a stipulation; it is without meaning, and it must be read out of the contract. If the company meant to say that false statements in the application by the applicant should avoid the policy, it has not said so by expression or by necessary implication; it has said nothing like that. The applicant was not put on notice by the quoted stipulation that he must answer the questions correctly at the peril of a loss of his contract, and he never agreed to so much by the stipulation. If the applicant's answer was material to the risk, the applicant was not advised of it by the quoted stipulation and has not therein contracted about it, so that its materiality is irrelevant to the stipulation. But the defendant has also pleaded in defense to the action a declaration by the insured found in the application, and to the effect that the answer before quoted was "true," and that it should "form a part of the contract issued by the said company on my life." The testimony tends to show that the applicant had consulted a physician about two years before the answer was made. So that we come instantly upon the defendant's postulate that the applicant's unexplained and maybe inaccurate answer before quoted, though free from any taint of deceit, vitiates the contract of insurance. All the answers—and there were upwards of a half a hundred of them—were written by the hand of the soliciting agent or the examining physician; and the present contention even that any inaccurate and thoughtless answer thus made is fatal to the contract is ground for grave reflection. It is true that the counsel for defendant concedes that the challeged answer must be "material to the risk" in order to vitiate the contract. And that fetches us directly to that question, and we confine ourselves to it.

Whether the answer under consideration was "material to the risk" is a mixed question of law and fact.

The only testimony thereabout is that of the medical directer, Dr. Muhlberg. He testified: "If any applicant states that he has consulted a physician within five years, our practice is to find out why he consulted a physician."

That is all.

The defendant has drawn the sword, and it must abide the practice of such. It has appealed to the letter of the contract; it must abide the letter of the testimony. It was bound to offer testimony tending to prove that in the instant case, had it known of the consultation, it would have "found out" the reason of the consultation; it did not do that. The witness did not say how he would "find out;" and he did not say that he would have rejected Dr. Gibbes' diagnoses and made one for himself; and, if he could say with any certainty what he "would have done," it would be hazardous to insurance contracts to make them depend upon what a person might have done under hypothetical circumstances. And at most, the issue of what the company "would have done" is one ordinarily for a jury, and not for a Court.

But we are satisfied that there is no testimony tending reasonably to prove that the instant answer was material to the risk, and that a verdict ought to have been directed for the plaintiff, and so much must yet be done.

The judgment is reversed.