16117

METROPOLITAN LIFE INS. CO. v. BATES
(49 S. E. (2d) 201)

270

*Messrs. Hubert E. Nolin* and *Benj. A. Bolt,* of Green-ville, for Appellant,

*Messrs. Haynsworth & Haynsworth,* of Greenville, for Respondent,

*Messrs. Hubert E. Nolin* and *Benj. A. Bolt,* of Greenville, for Appellant, in Reply.

August 4, 1948.

STUKES, J.: Already holding three life insurance policies aggregating over $8,000.00 in respondent Company, for the oldest of which ($5,000.00) he had been medically examined by a physician of the Company's choosing on March 9, 1945, applicant was repeatedly solicited by the agents of respondent to purchase an accident and health policy. This he applied for on April 15, 1946, and the application form was filled and witnessed by an agent, and applicant signed. Negative answers to two of the questions in the application are now concerned. One was whether applicant ever had, or been treated for numerous diseases and symptoms, including any disease of the stomach, vertigo and dizziness. The other relevant question was whether applicant had within the last five years medical or surgical advice or treatment or other departure from good health. The application was handled in the usual manner and forwarded to the Company with a satisfactory report of inspection which was vouched and signed by the Assistant District Manager and the District Manager. There was no additional medical examination and no advance collection of premium. Policy was issued in due course by the Company at its home office and forwarded to the Greenville branch office for delivery. When such was attempted appellant objected to the annual payment of premium and an agent for the Company prepared another application providing for a semi-annual instead of annual premium. This was dated May 24, 1946, and was identical with the first and likewise contained negative answers to the stated questions, which were inserted by one of the soliciting .agents, and was signed by appellant. On the same date the Company's agent procured appellant's signature to another form which was entitled "Request for change in mode of premium payment" and provided semi-annual instead of annual payments.

Policy in accord with the request was thereafter issued and delivered to appellant, dated May 24, 1946, and to it was

attached copy of the application of the same date. Sec. 7987-1, Code of 1942.

Appellant became ill about August 11, 1946, and called a physician who testified that he found appellant suffering from a nervous breakdown which he though was caused by overwork. He sent appellant to the General Hospital in Greenville whence he was moved on the next day to a hospital in Aiken where he was a patient for over a month. This physician had only casually seen appellant working in his drug store since his return from the Aiken Hospital. He made a physical examination when called to appellant about Aug. 11 and the latter gave a history of an attack of dizziness while driving his automobile; he was found to have a hypertension.

Appellant made claim on account of his illness for the policy benefits, which respondent refused. The latter gave notice on November 18, 1946, of cancellation of the policy on November 24, 1946, in accord with its right under its terms and thereafter commenced this action June 19, 1947, in the Court of Common Pleas for rescission of the policy contract upon the grounds that the negative answers to the questions constituted a warranty by the insured that the facts were as indicated by his answers; that the latter were false; that the respondent relied upon the answers and issued the policy but on November 18, 1946, had advised the insured that the policy would not be renewed, and upon discovering erroneous answers in the application tendered back the premium which had been paid, together with interest, but the tender was refused. The prayer of the complaint was for cancellation of the policy *ab initio*.

Appellant's answer denied any false or erroneous statements in the application and alleged that his answers in reference to the condition of his health were true. The answer contained a counterclaim upon the alleged liability of the Company under the policy for appellant's illness, including

weekly indemnity of $50.00 for nine weeks' disability, hospital expenses, etc., all aggregating $1,555.00, for which judgment was demanded against respondent. There was a reply to the answer which admitted the refused claim, denied liability under the policy, again alleged the erroneous answers to questions in the application upon which respondent relied and without them would not have issued the policy; further that appellant's disability resulted from sickness contracted prior to the date of the policy, liability for which was excluded under the terms of the latter.

Trial of the issues was commenced before a jury but at the close of the evidence the Court directed verdict in favor of respondent, that is, for appellant in the amount of the premiums paid. The grounds of respondent's motion are here copied from the transcript:

"We would like to move for a directed verdict on the grounds that this policy of insurance was void in its inception on the grounds that the application—and /that the amount has been tendered back—that is admitted in the answer—on the grounds that the application contains misstatements, which the testimony conclusively shows, at least the only conclusion from the testimony is that these were misstatements, and that said misstatements were-warranties.

"Now, if they be construed not as warranties, then we submit that we are still entitled to a directed verdict on the grounds that they are either a condition precedent or that they were statements material, representation material to the risk, and we are entitled as a matter of law that since they are misstatements and they are material to the risk to a directed verdict."

In the course of the ruling the court held that the questioned answers were representations rather than warranties, which matter is not necessarily before us in the absence of appeal or sustaining ground but it will be later noticed. Our

problem then is to determine whether the evidence was reasonably susceptible only of the inference that there were false representations, material to the risk and knowingly made with the intention to mislead the company into issuance of the policy,' which they did. *Kizer v. Woodmen of the World,* 177 S. C. 70, 180 S. E. 804. *Nix v. Sovereign Camp,* W. O. W., 180 S. C. 153, 185 S. E. 175.

Respondent's medical witness, Dr. Lipscomb, testified that he was called to appellant's home to see him on November 29, 1945, and found him with a respiratory infection and cold, gave him something for his stomachache and recommended that he go to his office for a check-up. This appellant did next day and the witness examined him, including a metabolism test. The doctor said that appellant gave him a history of gall bladder trouble and said that he had had an *x*-ray a year or so before, but he did not produce the picture and the doctor never saw it. The occasion of the consultation was appellant's complaints of dizziness, discomfort and pain in his chest and upper abdomen. Examination disclosed a mild anemia and slight hypo-thyroid. The doctor gave him something for his stomachache, advised him as to diet and also administered a small dose of thyroid. The thyroid condition was all that the examiner found although he was of the opinion, from the patient's history, that there was a chronic gall bladder disease.

Also offered as a witness by respondent was another doctor who was a specialist in *x*-ray. His records disclosed an *x*-ray of the gall bladder of William J. Bates, which is appellant's name, made on June 3, 1942. Other evidence indicated that Bate's father sometimes went by the same initials and they were associated together in the operation of drug stores. The *x*-ray expert witness had no recollection of appellant's call for an *x*-ray examination, and did not know him or his father. He testified solely from his records. The picture showed a disease of the gall bladder and the opinion of the witness was that the possessor of it would be

a sick man and would have needed the services of a physician before 1945. He said that the patient of whom the *x*-ray was made was referred to him by Dr. C. O. Bates.

The last named physician testified for the appellant that he had never had appellant as a patient and therefore had not referred him to the *x*-ray expert. However, he had practiced for appellant's father, whom he knew as Dr. John Bates and the son (the appellant) as Bill Bates. He operated on Dr. John Bates for removal of his gall bladder in 1934. The *x*-ray expert was in practice in Greenville at that time.

Only the items of this medical testimony which are considered most important have been recounted. With respect to it appellant testified that his wife's call of the physician to him at his home on November 29, 1945, was because he was sick at his stomach and the doctor advised him to come to the office next day for a metabolism test, which he did, and if the doctor got any information from him with respect to gall bladder trouble, it was in reference to his father's history of that. He denied that he had any *x*-ray examination in 1942 or at any other time for gall bladder or any other trouble. He recalled going with his father for the latter's *x*-ray examination; and he had never told anyone that he had had any gall bladder ailment.

It is impossible to conclude upon this conflicting evidence that there is only one reasonable inference as to the accuracy of it. It made an issue for the jury and should have been so submitted for solution.

The leading case of *Rogers v. Atlantic Life Insurance Co.,* 135 S. C. 89, 133 S. E. 215, 45 A. L. R. 1172, involved negative answers to questions in the application relating to the insured having had a surgical operation and also whether he had consulted or been treated by a physician for any ailment or disease not included in a long preceding list of questions concerning designated diseases. The applicant answered no to all. After his death it was ascertained that he

had had a local physician remove a small growth from his face and he was referred by that doctor to an Atlanta specialist who administered radium treatment upon his diagnosis of cancer. There was no evidence that the diagnosis was communicated to the applicant. Defense to liability upon the policy was in part upon the ground of the false statements in the application which were alleged to relate to material matters and the statements were relied and acted upon by the insurer, and were known by the insured to be false and made for the purpose of deceiving the defendant. However verdict for plaintiff was sustained on appeal and the court said that the question whether the insured by his negative answers intended to defraud and deceive the insurer was, under the testimony, properly submitted to the jury. The minor nature of the "surgery" was mentioned as was the fact that applicant was not told he had cancer. In that case there was an examination by a physician who represented the insurer and did not discover the scar from the "operation", and found applicant to be a good subject for life insurance. However, the matter of the examination was not specially relied upon by the court to uphold the submission of the issue to the jury as to whether the insured by his answers in the application intended to practice a fraud upon the defendant. The prior cases of *Huestess v. South Atlantic Life Insurance Co.*, 88 S. C. 31, 70 S. E. 403, 405, and *Wingo v. New York Life Ins. Co.*, 112 S. C. 139, 99 S. E. 436, were cited as authority for the conclusion and from the opinion in the *Huestess case* the following was quoted with approval: "There is no direct or positive testimony tending to show that the insured intended to practice a fraud upon the defendant, other than mere inference, arising from the signing of the application for insurance, containing 'he answers alleged to be false."

Our case of *Johnson v. New York Life Insurance Co.*, 165 S. C. 494, 164 S. E. 175, is cited to substantiate the following statement in 45 C. J S., In-

surance, § 595, page 402: "On the other hand, it has been held that false representations will not avoid a policy unless insured knew that they were false or was chargeable with such knowledge; and the test of recovery is the good faith of the insured in making them. Accordingly, many authorities hold that in order to avoid a policy misrepresentation must have been made willfully, fraudulently, and with intent to deceive." In the *Johnson case* the appellant answered no to all of the health questions, which included false negative answer to the question whether he had ever consulted a physician for any ailment or disease, except that he said he had had a·ten day attack of influenza and during two subsequent years he had had treatments of cold vaccine, with good results, and he expressly represented that he had consulted no physician except in the foregoing instances. It was conceded by the defendant that the answers which turned out to be false were representations and to avoid the policy it was required to be shown that they were fraudulent. In the case in hand the statements were held by the trial court to be representations and there is no appeal or sustaining ground by respondent.. (Thus that point is not presented but we think the conclusion correct; the statements were in the *application for an insurance contract,* not part of it, and do not profess to be warranties. Copy of the application was attached to the resulting contract presumably pursuant to the statute.)

The prior case of *Gambrill v. Insurance Co.,* 83 S. C. 236, 65 S. E. 231, was thereby distinguished. The court then concluded, applicable here, as follows [165 S. C. 494, 164 S. E. 176]: "Where a statement of fact in an application is only a representation, its mere falsity is not sufficient to avoid the policy, its materiality and the good faith of the applicant in making it being important considerations. Under the issues made in the case at bar, it would be necessary for the defendant to show that the statements in the application relied on to defeat the policy were untrue, that their

falsity was known to the applicant, that they were material to the risk and relied on by the insurer, and that they were made with intent to deceive and defraud the company." Reference was made to the fact that the undisputed testimony showed that during the five years immediately preceding the application, the insured had been treated by physicians for alcoholism on ten different occasions, with periods of illness of from one to four weeks, on one of which he was confined to a hospital. It was concluded that under the evidence the applicant was obliged to know that his answers in the application were false and that the matters concerned were material to the risk, relied upon by the insurer. It was then said: "Finally, the intent with which representations or misstatements of facts are made is a thing that is locked up in the heart and consciousness of the applicant. It may be shown by his express words, or it may be deduced from his acts and the facts and circumstances surrounding the making of the misrepresentations, though on this question the mere signing of the application containing the answers alleged to be false is not conclusive. *Huestess v. Insurance Co.,* 88 S. C. 31, 70 S. E. 403. Under the circumstances of this case, we do not see how any reasonable inference as to the applicant's intent in making his answer to the questions under consideration could be drawn from the undisputed facts other than that he deliberately intended to deceive the company and thereby procure the insurance." And further: "We recognize that, ordinarily, the question of fraud in a case of this kind is for the jury, but we feel that this is one of those rare cases in which the undisputed facts can reasonably give rise to only one inference, namely, that the policy was procured by fraud. The trial court should have directed a verdict for the defendant on that ground." The facts of that case quite clearly distinguish it from this. The quoted law is applicable.

Another of such "rare cases," even rarer, is *Parker v. Pacific Mutual Life Insurance Co.,* 179 S. C. 117, 183 S.

E. 697, where the syllabus is: "Statement in application for life policy containing provision for disability benefit that insured had attacks of influenza and pneumonia from which there was complete recovery seven years before application, and had been treated by physicians only at that time, where in fact there had been recurring attacks of same disease at frequent intervals thereafter, as to which he had consulted numerous physicians, held to avoid policy as a matter of law." Greater enormity of misrepresentation can hardly be imagined than that disclosed by the facts of that case, which are fully set forth in the opinion and need not be reviewed. Of added aggravation was the fact that insured was himself a physician and practiced the speciality of which he had been a victim for many successive years before his application for insurance.

The facts of the *Johnson case* and of the *Parker case*, both *supra,* are in sharp contrast to the facts of the case in hand. The one consultation with a physician by appellant, of which there is uncontradicted evidence, was very minor in comparison, and the evidence indicates that applicant thought it so much so that he did not call it to the attention of respondent's soliciting agent who filled the application for him, and appellant frankly said on cross-examination that he would have made the same omission had he personally filled the blank. Reasonable inference from this testimony is, as said, that he considered it of insufficient consequence to notify the company by answering affirmatively as to it. For the same reason it is questionable whether if the incident had been reported in the application and if respondent had made inquiry of the physician, it would have been deterred from issuance of the policy by information from the latter. There was no testimony as to that.

The rule which is applicable to the facts of this case, stated in the *Johnson case, supra,* is firmly established by many decisions, some of which will be briefly mentioned. *Floyd v. New York Life Ins. Co.,* 110 S. C. 384, 96 S. E. 912,

is summarized in this particular in a syllabus, which is: "In action on life insurance policy, defended on ground of insured's fraud and concealment in stating that he had not consulted any physician about an illness not specifically mentioned in application,. evidence held not to show fraud or concealment," although the insured had consulted two physicians who found a serious disease. The issue was stated by the court to be whether the insured's answer in the application was so untrue as to. avoid the policy. *Livingston v. Union Central Life Ins. Co.,* 115 S. C. 128, 104 S. E. 538, 540, was defended upon the alleged untrue answer to a question in the application by which insured was asked if he had had any illness or consulted any physician in the preceding five years. The observations. of the court in the opinion are worth quoting as follows:

"Whether the answer under consideration was 'material to the risk' is a mixed question of law and fact. The only testimony thereabout is that of the medical director Dr. Muhlberg. He testified: 'If any applicant states that he has consulted a physician within five years, our practice is to find out why he consulted a physician.' That is all.

"The defendant has drawn the sword, and it must abide the practice of such. It has appealed to the letter of the contract; it must abide the letter of the testimony. It was bound to offer testimony tending to prove that in the instant case, had it known of the consultation, it would have 'found out' the reason of the consultation; it did not do that. The witness did not say how he would 'find out'; and he did not say that he would have rejected Dr. Gibbes' diagnoses and made one for himself; and, if he could say with any certainty what he 'would have done,' it would be hazardous to insurance contracts to make them depend upon what a person might have done under hypothetical circumstances. And at most, the issue of what the company 'would have done' is one ordinarily for a jury, and not for a court. But we are satisfied that there is no testimony tending reasonably to

prove that the instant answer was material to the risk, and that a verdict ought to have been directed for the plaintiff, and so much must yet be done."

*Southeastern Life Insurance Co. v. Palmer,* 129 S. C. 432, 124 S. E. 577, 578, was a case of similar procedure to this. The verdict for the defendant was upheld upon facts less favorable for validity of the policies than those in the instant case and the issue of fraud was held to have been properly submitted to the jury, and the court said: "Conscious fraud could not be inferred from mere inaccurate answers, especially when the answers were written by the agents of the company, and the testimony shows a subsequent thorough investigation by the company of the applicant's physical condition, independent of the answers of the applicant." True, the latter feature is not as strongly in this case but there is the fact of the medical examination of appellant for life insurance in the same insurer about a year prior. The leading opinion in the *Palmer case* contains numerous citations of earlier South Carolina decisions, some not cited here.

*Wingo v. New York Life Ins. Co.,* 155 S. C. 206, 101 S. E. 653 (former appeal reported in 112 S. C. 139, 94 S. E. 436), involved false negative answer to the question whether he had suffered from a disease of the lungs and, if so, the name and address of the physician was required. The applicant had previously been told by physicians that he had such a disease, or they feared it. The court held that verdict should not have been directed; that such an answer is only fatal when it is prompted by an intent to deceive and that the circumstances of the case did not leave the issue free from doubt. The court further held that such a fraud must be proved by clear and convincing testimony because it involves wicked intent, and that this rule of evidence is the same in law and equity. *New York Life Ins. Co. v. Greer,* 170 S. C. 151, 169 S. E. 837, was a suit to rescind for false statement in application for reinstatement of the

policy, that the applicant had not been treated by a physician within the two preceding years. As a matter of fact she had, as a college student, been confined to the institutional infirmary and regularly seen by the college physician for six consecutive days for nervousness, and disability by insanity developed within about a year and a half after reinstatement of the policy, in connection with which the erroneous answer was given. Submittal of the issue made by the defense to the jury and verdict for the insured were upheld upon the ground that the hospitalization was routine, mainly for rest, and the physician found no serious disease and prescribed only rest; and that the insured testified for herself that she considered the hospitalization too trivial a matter to mention in answering the question in the application for reinstatement of the policy, and did not intend to conceal anything from the Company. This testimony was held, as said, to make a jury issue, which is very close to the case in hand.

In *Sirgany v. Equitable Life Assur. Soc.*, 173 S. C. 120, 175 S. E. 209, the rule applicable to false application answers was reaffirmed and it was again held that it was for the jury to say whether the answer was made for the purpose of defrauding and deceiving the Company. *Suggs v. New York Life Ins. Co.*, 174 S. C. 1, 176 S. E. 457, is to the same effect. The majority opinion was by Mr. Justice Stabler, afterward Chief Justice, who was also the writer of many of the other opinions in this line of cases. The court followed him again in this instance and held under circumstances similar to those of the case in hand that the jury should say by their verdict whether the erroneous answers of the insured in his application for insurance were made by him with intent to deceive and defraud the insurer. Mr. Justice Bonham, who had dissented in the *Suggs case, supra,* wrote the opinion in *Stewart v. Pioneer Pyramid Life Ins. Co.*, 177 S. C. 132, 180 S. E. 889. It was a policy reinstatement case in which the insured answered in the

application that he had consulted a physician in the preceding five years for minor, stated ailments, whereas the insurer contended and produced evidence to the contrary. It was said by Mr. Justice Bonham (afterward also Chief Justice) that it was for the jury to decide whether the insured intentionally, and for the purpose of commiting a fraud on the insurer, concealed material facts and he said that this is the settled rule of this jurisdiction, for which he cited several of the decisions hereinabove reviewed. The long line of cited cases leaves no room for doubt that the rule is as contended for by appellant in the instant case and the lower court inadvertently departed from it in view of the evidence adduced.

Late decisions relating to application misstatements as to health history which are relied upon by respondent are: *Cooley v. Metropolitan Life Ins. Co.,* 153 S. C. 280, 150 S. E. 793; *McLester v. Metropolitan Life Ins. Co.,* 175 S. C. 425, 179 S. E. 490; and *Murray v. Metropolitan Life Ins. Co.,* 193 S. C. 368, 8 S. E. (2d) 314. They are all distinguishable upon their respective facts and were cases where the court concluded in each of them, as in the *Johnson case* and in the *Parker case,* both *supra,* that the only reasonable inference from the evidence was that the insured knowingly misrepresented a material matter, intending to defraud the insurer, which, in reliance thereon, issued (or reinstated) the policy. But as the late Mr. Justice Bonham (later Chief Justice) said in the opinion in *McLester,* 175 S. C. at page 431, 179 S. E. 492, "each case must stand on its own bottom." Here the "bottom" is susceptible of more than one reasonable inference as to most of the elements of forfeiture, and it should be for a jury to say whether they are proved by the preponderance of the evidence.

Error of the trial judge occurred when he concluded, quoting his words from the record: "Now, the real issue is: Are those statements false or not." And

this appears to be the only element of the defense to liability upon a policy, which accrues to the insurer upon a false representation by an applicant, that was considered by him. He apparently overlooked and omitted from his consideration materiality, reliance, scienter and fraudulent intent. And thereby, doubtless, he was led into the error of directing the verdict. Respondent has largely confined its brief in this court to the negative answer to the question in the application relating to medical advice within the prior five years, probably because the inaccuracy of it is undisputed in the evidence; and like the lower court, respondent practically ignores in argument the other components necessary to constitute this a valid ground of avoidance of the policy.

The view indicated requires sustention of appellant's first and second points or "questions involved," which will result in a new trial. This necessitates decision upon the third point which relates to alleged error in the rejection of proffered evidence by appellant. He sought to testify that upon acquisition of the policy of respondent he cancelled three policies of accident and health insurance which he held in other companies. This was excluded upon objection. The exception was argued by appellant without citation of authority; and respondent ignored it in the brief.

The charge against appellant which is contained in the complaint and was developed in the evidence is in the nature of fraud. It is well established that this expands the field of relevancy, pro and con. S. C. cases in 16 S. E. Digest page 307, Fraud, Key 52.

It seems to us that there was relevancy in the excluded testimony and it was error to reject it. The good faith of appellant was on trial. It has been repeatedly held that the general good character of an applicant for inurance is admissible in evidence in such a case. It was testified by appellant without objection that respondent's soliciting agents went over his existing accident and health policies,

issued by other insurers, and pointed out claimed advantages of that which they sold him. He yielded to their persuasion and as a part of the transaction, so far as he was concerned, gave up his former policies and thereafter depended for financial protection against loss from disability solely upon the new policy which was issued to him by respondent. This tends to disprove fraudulent intention on the part of appellant and should have been admitted. One procuring insurance dishonestly would probably also hold on to that which he already has. (Incidentally, he would probably also have accepted the new policy as originally written and paid the annual premium, not requiring the rewriting and thereby incurring further delay. Moreover, the policy was by its terms cancellable at the option of the insurer which would be an undesirable contract for one who anticipates disability.)

Perhaps the exclusion of the testimony in question would not alone constitute reversible error for the trial judge properly possesses considerable discretion in such matters. *Suber v. Parr Shoals Power Co.,* 113 S. C. 317, 102 S. E. 335. Here however sustention of the point will guide the court in the second trial.

Reversed and remanded for a new trial.

BAKER, C.J., and FISHBURNE, TAYLOR, and OXNER, JJ., concur.