16198

ABERCROMBIE v. PILOT LIFE INS. CO. OF
GREENSBORO, N. C.
(52 S. E. (2d) 400)

*Messrs. Osborne, Butler & Moore,* of Spartanburg, *for Appellant,*

*Messrs. John C. Williams and Lyles & Lyles,* of Spartanburg, *for Respondent,*

March 17, 1949.

STEVE C. GRIFFITH, Acting Associate Justice.

In the County Court of Spartanburg, South Carolina, in a trial by jury, the respondent recovered judgment for the death benefit under a policy of life insurance, and the appellant appeals solely from the refusal of the County Judge to grant its motion for a directed verdict. The grounds of the motion were as follows:

"1. The only reasonable inference to be drawn from the evidence is that the deceased. Jasper Dupre Abercrombie, was not in sound health on the date the application was taken and on the date of the delivery of the policy involved and, under the provisions of said application and policy, the policy never became effective.

"2. On the ground that the only reasonable inference to be drawn from the evidence is that the deceased, * * * made false and material misstatements in his application for the policy, upon which the defendant relied in issuing the policy, and the policy is therefore avoided because of false material representations made in applying for and obtaining the policy.

"3. The only reasonable inference to be drawn from the evidence is that if the soliciting agent received any information with respect to the deceased having any condition which rendered him uninsurable that such agent's knowledge is not imputable to nor binding upon the Defendant-Company for the reason that such information was not communicated to the Company, and the agent's acts in receiving such information without communicating the same to the Company would constitute a fraud upon the Company, with the proven knowledge that he was uninsurable, and such

collusive action, if it occurred, is not binding upon the defendant."

The appellant by proper exceptions raises the same questions here, except the third ground which it has abandoned.

Both the application for the insurance, and the policy issued thereon, contained a provision that the policy would not become effective until its delivery and the payment of the first premium while the insured was in good health.

The policy was delivered and the first, and all subsequently accruing premiums were paid, but the insured was not in good health on either the date of the application or the delivery of the policy. The lower Court held, in passing upon the first ground of appellant's motion, that there was sufficient evidence of waiver of the sound health provision to require submission of this question to the jury.

The insured, a man about forty years of age at the time of the delivery of the policy, had suffered a burn on his head when less than two years old. This burn produced a noticeable sore on his scalp that never healed. The sore was examined and treated by a physician on February 18th, 1946, the day before the application for the insurance was dated, and was readily diagnosed, by the observation of the physician, as a cancer. This physician described the appearance of the sore at that time as "an area on the posterior of the scalp that was about five centimeters in diameter, that is two inches, which had the appearance of cauliflower, a fungating growth, and a little larger area of scar tissue surrounding".

The insured was then working regularly at his usual avocation as an automobile mechanic, which is described as hard manual labor, and continued to do so until some time about August, 1946, after which he rapidly became progressively worse, was repeatedly hospitalized, and finally died of the malady on July 26, 1947. All of the doctors and surgeons who treated him were unable to say whether or not they

advised him that he was suffering from cancer, and no one knows if he ever knew the cause from which he died.

A mechanic who worked in the same garage as the insured, testified that he heard a portion of a conversation between the appellant's soliciting agent and the insured, which took place at the garage. According to this witness, when the insurance agent sought to sell the policy, the insured replied that, "You can't write me any insurance because of this", and pointed to his head; and the agent replied that, "My company can write it". The witness during his examination summarized the conversation as follows:

"The conversation went along the fact Mr. Daniels was trying to sell Mr. Abercrombie a policy of insurance and Mr. Abercrombie showed Mr. Daniels the sore on his head and Mr. Daniels said that his insurance company could write him a policy."

The remainder of the conversation was not heard, and the witness was not present when the application was written. From the application it is shown that the agent had known the insured for eight years. The agent did not testify. No medical examination of the insured was required.

The appellant does not contend that the sound health provision of a life insurance policy cannot be waived by the soliciting and delivering agent. It recognizes that our Court has held otherwise in a large number of cases, of which the following are examples: *Huestess v. South Atlantic Life Insurance Company*, 88 S. C. 31, 70 S. E. 403; *McLaurin v. Mutual Life Insurance Company*, 115 S. C. 59, 104 S. E. 327; *Fender v. New York Life Insurance Company*, 158 S. C. 331, 155 S. E. 577; *Able v. Pilot Life Insurance Company*, 186 S. C. 26, 194 S. E. 628.

Appellant seeks to distinguish the present case from the foregoing line of decisions, on the ground that, here, neither the insured nor the agent knew that the insured was suffering from cancer. It argues that waiver is based upon the re-

linquishment of a known right, and if there is an absence of knowledge, there can be no waiver.

This Court has not held either expressly or by implication that before there can be a waiver of a sound health provision of a life insurance policy that the bad health condition of the insured must be correctly determined, and the agent of the insurer furnished with an accurate diagnosis. On the contrary, in one of the earlier cases on the subject, the following rule was laid down, which has never been repudiated:

"But even if it be successfully contended that the testimony failed to show he had such a disease, as rendered him an unfit subject for life insurance, nevertheless it clearly tended to show that the agent was informed of such facts by the insured, as were sufficient to put a reasonably prudent man on inquiry, which, if pursued with due diligence, would have led to the knowledge of the fact that the insured had Bright's disease, and this is the equivalent of actual notice. *McGee v. French,* 49 S. C. 454, 27 S. E. 487." *Huestess v. South Atlantic Life Insurance Company, supra* [88 S. C. 31, 70 S. E. 406].

Applying that principle here we are satisfied that there was ample evidence of waiver. In substance, the insured frankly told appellant's agent that he was not insurable, and the Company, without further, inquiry promptly brushed the objection aside.

Furthermore, one does not have to be a doctor to know that a sore, and particularly one on the head of the appearance as described here, which has refused to heal over a period of nearly forty years, may be dangerous to health.

By the second ground of the motion for a directed verdict, and relied upon here, appellant contends that the insured made false and material misrepresentations in his application for the insurance. The application, filled out in the handwriting of the agent, stated that the applicant had had

no illnesses, except an attack of "Flu" in 1924, and all children's diseases in early childhood, that he was in good health, and had not consulted a physician. As before stated, the applicant had consulted a physician with regard to the sore on his scalp on the day prior to the date on the application; and the failure of the application to show that fact is relied upon to avoid the policy.

In the recent case of *Metropolitan Life Insurance Company v. Bates,* 213 S. C. 269, 49 S. E. (2d) 201, the authorities on this question were carefully reviewed, and quoting with approval from the earlier case of *Johnson v. New York Life Insurance Company,* 165 S. C. 494, 164 S. E. 175, it is said [213 S. C. 269, 49 S. E. (2d) 205] :

" 'Under the issues made in the case at bar, it would be necessary for the defendant to show that the statements in the application relied on to defeat the policy were untrue, that their falsity was known to the applicant, that they were material to the risk and relied on by the insurer, and that they were made with intent to deceive and defraud the company.' "

We need to consider only the requirement of intent to deceive and defraud. How can it be said here that the evidence is conclusive that the insured intended to deceive and defraud the company? Assuming that the insured gave the alleged false answers, as recorded, it is obvious that he may have been led to believe by the appellant's agent that the condition of his head was of no consequence. His straightforward and commendably frank statement that he was not insurable, bespeaks honesty and negatives the charge of fraud. And the fact that he made that statement is an undisputed fact in this case. For all we know he may have told the agent that he had consulted a physician on the day before, and was assured that was of no importance. It is reasonable to infer that the insured may have been led to believe that inasmuch as he was strong, and engaged in hard

manual labor, regularly, he met the requirements of the company. "The agent and applicant are not upon equal terms of knowledge. The applicant is generally ignorant of the powers of the agent and the special rules by which the solicited contract is to be controlled." *McCarty v. Piedmont Mutual Insurance Company,* 81 S. C. 152, 155, 62 S. E. 1, 2, 18 L. R. A., N. S., 729.

No one has pretended to detail the entire conversation between the insured and the agent. The latter's failure to testify is unexplained. On this record we are unwilling to say, as a matter of law, that the deceased was guilty of any fraud.

The following quotation from *Huestess v. South Atlantic Life Insurance Company, supra,* approved in *Metropolitan Life Insurance Company v. Bates, supra,* is applicable here:

"There is no direct or positive testimony tending to show that the insured intended to practice a fraud·upon the defendant, other than the mere inference, arising from the signing of the application for insurance, containing the answers alleged to be false."

Judgment affirmed.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.