17937

ATLANTIC LIFE INSURANCE COMPANY, Appellant, v.
Thelma M. BECKHAM, Respondent
(126 S. E. (2d) 342)

*Messrs. McKay, McKay, Black & Walker* of Columbia, and *James P. Swift,* of Dallas, Texas, and *Robert Corstaphney,* of Richmond, Virginia, *of Counsel, for Appellant,*

*Charles B. Elliott, Esq.,* of Columbia, *for Respondent,*

*Messrs. McKay, McKay, Black & Walker,* of Columbia, and *James P. Swift,* of Dallas, Texas, and *Robert W. Corstaphney,* of Richmond, Virginia, *of Counsel, for Appellant,*

June 21, 1962.

TAYLOR, Chief Justice.

This appeal comes from the Court of Common Pleas for Richland County where Appellant seeks rescission of two insurance contracts issued on the life of one Amon Jackson Beckham, with the Respondent, Mrs. Thelma M. Beckham, being named as primary beneficiary.

It is alleged in the complaint that because of certain alleged fraudulent misrepresentations, statements and omissions, which the insured made in his application for such insurance, concerning his state of health and the treatment he had received prior to such application were made fraudulently. The answer denied any fraudulent acts on the part of the insured, and by way of counterclaim, alleged that the defendant was entitled to judgment for the face amount of the two policies totaling $6,500.00 plus interest. The reply to the counterclaim denied that there was any amount due and owing to Respondent under the policies for the reason that they were obtained by false and fraudulent misrepresentations made to Appellant by the insured, Amon J. Beckham.

Upon conclusion of Appellant's testimony, motion for nonsuit was duly made and denied. Appellant also moved for permission to conform its pleadings to the proof so as to allege decedent's failure to give full and complete disclosures in response to Questions 10, 11d, and 12 of the application. This motion was granted.

Appellant moved for a directed verdict on the ground that the only reasonable inference to be drawn from the testimony was that statements made by the insured, Beckham, in the application were known to be false and were intended to and did mislead the Appellant Insurance Company. This motion was refused and the case submitted to the jury who found for the Respondent on her counterclaim in the amount of $6,500.00 plus interest. Appellant thereupon moved for judgment notwithstanding the verdict or in the alternative for a new trial. Both motions were denied and appeal follows.

Appellant contends here that the Court erred in failing to grant its motion for judgment notwithstanding the verdict. A new trial is not sought, it being contended that Appellant is entitled to rescission of the contracts of insurance as a matter of law, and this is the sole question before this Court.

On May 20, 1958, the late Amon J. Beckham made written application to Appellant for a policy of insurance on his life in the face value of $1,500.00, with a Home Security Rider in the amount of $5,000.00. On May 27, 1958, Policy No. 404564 in the face amount of $1,500.00, with a Home Security Rider in the amount of $5,000.00 was issued the applicant with Mrs. Thelma M. Beckham, wife of the said Amon J. Beckham, designated primary beneficiary. Thereafter, the mortgage in question having been paid, the deceased, Amon J. Beckham, upon solicitation by Appellant's agent, on May 27, 1959, was re-issued Policy No. 404564 on the life of Amon J. Beckham in the face amount of $1,500.00, with the Home Security Rider eliminated, and another life Policy, No. 413807, of $5,000.00 to replace the protection afforded by the former policy.

Appellant's contention that it is entitled to a rescission of the contracts as a matter of law is bottomed primarily upon the following questions and answers as they appear in the application:

"10. Have you ever had an electro-cardiogram, $x$-ray, or blood study? Yes.

"11. Have you ever had or been told you had

a. Rheumatism, malaria, gout, diabetes, cancer, or goiter? Yes.

\* \* \*

d. High blood pressure, pain around heart, anemia, or varicose veins? No.

"12. What doctors or practitioners not mentioned above have you consulted during the last five years? Name all, give name and address of each, and state what for.

\* \* \*

" 'Flu' 1-1-58 3-4 day good

"J. A. Fort, Jr."

In reply to Question 10, "Have you ever had an electro-cardiogram, $x$-ray, or blood study?", the insured answered, "Yes." The "Yes" could, of course, apply to the electro-cardiogram, $x$-ray, or the blood study or to all three.

Immediately below Question 3 on the left side of the page and Question 10 on the right side of the page is an unbroken line across the entire page, followed on the left side by Question 11:

"Have you ever had or been told you had

"a. Rheumatism, malaria, gout, diabetes, cancer or goiter? Yes.

"b. Dizziness, fainting, epilepsy, paralysis, or nervous breakdown? No.

"c. Blood spitting, asthma, bronchitis, pleurisy, pneumonia, lung abscess, or tuberculosis? No.

"d. High blood pressure, pain around heart, anemia, or varicose veins? No.

"e. Hernia, appendicitis, ulcer, gall bladder disease? Yes.

"f. Syphilis or a positive Wassermann test? No.

"g. Renal colic or stone, or disorder of kidneys, bladder, or genito-urinary organs? Yes.

"h. Disease of skin, glands, bones, joints, spine or tumors? No.

"i. Have you had any disease of the eye, ear, nose or throat? Yes.

"j. Have you had any disease or illness not mentioned above? Yes."

These questions with space for answers occupy the left half of the page and are followed by another unbroken line across the entire page, leaving the right half vacant with instructions to write in dates and details of all questions answered "yes." This space was used to give information concerning the "yes" answers to the questions presented in Question 11 and not Question 10 as contended. This information written in by Dr. Fort, who was Applicant's family physician as well as Appellant's agent, appears as follows:

"a. 1951—Veterans Hosp.—35 u NP insulin Last blood sugar 30 days ago now—at Cola. Hosp. lab—174—fasting.

"e. Hernia rt. inguinal—repaired in 1936—Has recurred

"g. Prostate operation—1951—Veterans Hosp. Results good

"i. T & A—1940

"j. Fistula—1942—Veterans Hosp."

Such information appears opposite the "yes" answers to the questions presented, and when considered in conjunction therewith, in our opinion, are neither confusing nor misleading; however, "It is generally held that where, upon the face of an application, a question appears to be imperfectly or incompletely answered or not answered at all, the issuance of a policy without further inquiry waives the want of, or the imperfection in, the answer." 29 A. Am. Jur., Insurance, Section 1075, p. 241.

The response to Question 11a was "yes" with respect to diabetes. It is apparent therefore that Appellant Insurance Company was informed that the applicant, Beckham, had diabetes, a hernia operation, and prostate operation; and as

a result of his physical condition, the Appellant Company uprated him, and he was charged an additional premium on account of his condition, particularly diabetes.

With respect to Question 11d, "Have you ever had or been told you had * * * d. High blood pressure, pain around heart, anemia, or varicose veins?", the answer is "No." Appellant contends that this question should have been answered "yes" as to pain around the heart. According to the statement signed by the applicant, Beckham, at the time of entering the Veterans Hospital and also Dr. Engel's testimony, Beckham admitted to "substernal pressure and pain left arm, shoulder to elbow on exertion. This, with shortness of breath. Pain rarely lasts more than a few minutes and disappears with rest. Took some treatments, A. J. Fort, who said it was change of life and gave him 'shots' which have helped this pain. He used to have some of this pain on retiring at night which lasted fifteen minutes, but since taking the 'shots' he has none and can relax and sleep well. The pain returns on exertion." It is therefore evident that when Dr. Fort, the family physician for the applicant and also the agent for the Appellant, filled in the questions in the application blank, he knew that Beckham had pain in the left arm and that he had diagnosed its cause as change of life and had treated Beckham therefor by giving him "shots." The question was not whether applicant had had "pain in the arm" but whether he had "pain around the heart."

Question 12 is as follows: "What doctors or practitioners, not mentioned above have you consulted during the last five years? Name all, give name and address of each and state what for." In reply, in the box space under Question 11 where the names and addresses of the doctors were to be listed, Dr. Fort apparently felt that it was unnecessary to name the individual doctors and wrote in "Veterans Hospital" as the place of treatment. It might well be that the applicant or even Dr. Fort did not know all or which members of the staff of this institution had been assigned to Re-

spondent's case without referring to the hospital records. Beckham attended the same Veterans Hospital in 1955 as he previously attended in 1951. His records were not in various places or in different hospitals but were available at the institution listed. Further, it readily appears upon the face of the application that the individual doctors were not named, that instead "Veterans Hospital" was written in. No request for clarification or further information was made even though the medical experience listed was sufficient to, and in fact did, put Appellant upon inquiry. *Abercrombie v. Pilot Life Ins. Co. of Greensboro, N. C.,* 214 S. C. 350, 52 S. E. (2d) 400; *Pilot Life Ins. Co. v. Pulliam Motor Co.,* 4 Cir., 229 F. (2d) 912.

Other questions and answers of interest are: Question 5, "Have you ever had a surgical operation? Hernia—1936 Rt. inguinal. Were you ever advised to have one? Fistula— 1942—Hernia—recurred." Question 6, "Were you ever told that you had albumin, sugar, blood, or pus in your urine? Yes. Prostate gland operation 1951. * * *" Question 9, Have you ever taken insulin or other treatment for diabetes? Take insulin now * * *" Because of the "yes" answers, the last paragraph of the policy states: "On account of the increase in the rate of mortality to which the Insured is subject, an additional charge is included in the premium stated on the front of the first page hereof. This additional charge is not considered in the calculation of the nonforfeiture values."

Answers to questions concerning the health of an applicant for life insurance are representations and not warranties, and such answers, even if false, will not void the policy unless they are material to the risk, known by the applicant to be false, made with the intent to mislead the insurer and are relied upon by the insurer as a basis for the issuance of the policy. *Ellis v. Capital Life and Health Insurance Company,* 229 S. C. 388, 93 S. E. (2d) 118. Only in rare cases should a verdict be directed for the insurer.

This Court is quite liberal in such cases in allowing juries to pass upon questions of alleged fraud in applications for insurance, *Metropolitan Life Ins. Co. v. Bates,* 213 S. C. 269, 49 S. E. (2d) 201; *Mickle v. Dixie Security Life Ins. Co.,* 216 S. C. 168, 57 S. E. (2d) 73; *Reese v. Woodmen of World Life Ins. Soc.,* 221 S. C. 193, 69 S. E. (2d) 919; *Johnson v. New York Life Ins. Co.,* 165 S. C. 494, 164 S. E. 175; and *Cain v. United Insurance Company,* 232 S. C. 397, 102 S. E. (2d) 360.

■    It is incumbent upon the insurer to show not only that the statements complained of were untrue but, in addition, that their falsity was known to the applicant, that they were material to the risk, and relied on by the insurer, and that they were made with the intent to deceive and defraud the company. *Johnson v. New York Life Ins. Co.,* 165 S. C. 494, 164 S. E. 175; *Lipsey v. Life Ins. Co. of Georgia,* 221 S. C. 291, 70 S. E. (2d) 349; *Metropolitan Life Ins. Co. v. Bates,* 213 S. C. 269, 49 S. E. (2d) 201; *Sligh v. Sovereign Camp, W. O. W.,* 117 S. C. 437, 109 S. E. 279; *Rogers v. Atlantic Life Ins. Co.,* 135 S. C. 89, 133 S. E. 215, 45 A. L. R. 1172; *Sirgany v. Equitable Life Assurance Society,* 173 S. C. 120, 175 S. E. 209; *Suggs v. New York Life Ins. Co.,* 174 S. C. 1, 176 S. E. 457; *Crumel v. Metropolitan Life Ins. Co.,* 179 S. C. 338, 184 S. E. 169.

■    Dr. Fort's diagnosis was not that of heart trouble but change of life. Question 11d was not whether applicant suffered pains in the left arm but whether he had "Pain around the heart." The Narrative Summary introduced into the record indicates that Respondent went to the Veterans Hospital in 1955 with complaint of "diabetes mellitus and bilateral inguinal hernia" and that he desired the hernia repaired.

There is evidence to the effect that applicant did not seek the insurance but was persuaded to purchase same by Appellant's agent; that applicant revealed his hospitalization

record to Appellant through Dr. Fort, who, as agent for Appellant and also applicant's family physician, filled out the application; that Appellant saw fit to issue such policies upon an application made one year previously without further examination or inquiry except the additional statement "and I am not now disabled"; that because of applicant's physical condition (diabetes) the premium was uprated; that Dr. Fort had diagnosed applicant's arm pain as being caused by change of life and Dr. Engel had no definite recollection of informing Beckham that he had diagnosed his case as angina. Nitroglycerine had been prescribed, but there is no evidence that Beckham knew why. Applicant gave Appellant authority in writing to obtain full statements covering any treatment or consultations received by him but evidently no such information was sought until after the insured's death on December 11, 1959.

Cases of this nature must of necessity stand on their own peculiar facts, *Metropolitan Ins. Co. v. Bates,* 213 S. C. 269, 49 S. E. (2d) 201; and we are of opinion that the issues as developed here were properly submitted to the jury to say whether the Appellant Insurer by clear and convincing testimony established its claim for rescission, that the verdict and judgment appealed from should be affirmed; and It Is So Ordered.

Affirmed.

Moss, Lewis, and Bussey, JJ., and Legge, Acting Associate Justice, concur.